UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARIAM DAVITASHVILI, *et al.*,

    Plaintiffs,

        v.

GRUBHUB INC., *et al.*,

    Defendants.

No. 1:20-cv-03000-LAK

**ECF Case**

**Electronically filed**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GRUBHUB INC.'S
MOTION TO COMPEL ARBITRATION OF CERTAIN NAMED PLAINTIFFS' CLAIMS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 1

    I.      Plaintiffs' Class Action Claims Based on Defendants' Contracts With Restaurants ............................................................................................................. 1

    II.     Six Out Of Seven Named Plaintiffs Admit to Using Grubhub .............................. 2

    III.    The Arbitrating Plaintiffs Agreed to Arbitration Every Time They Placed Orders Through Grubhub ....................................................................................... 3

    IV.    Grubhub's Terms of Use and Dispute Resolution Provision Require Arbitration ............................................................................................................... 4

LEGAL STANDARD ..................................................................................................................... 6

ARGUMENT .................................................................................................................................. 8

    I.      Each Arbitrating Plaintiff Entered Into a Binding Contract with Grubhub to Arbitrate This Dispute ....................................................................................... 8

    II.     The Arbitrating Plaintiffs' Claims Fall Within the Broad Scope of Grubhub's Agreement ............................................................................................ 10

    III.    The Arbitrating Plaintiffs' Claims Must be Stayed Pending Completion of Arbitration ........................................................................................................ 13

CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                   Page(s)

*In re A2P SMS Antitrust Litig.*,
   972 F. Supp. 2d 465 (S.D.N.Y. 2013) ...................................................................... 11, 12, 13

*Am. Express Co. v. Italian Colors Rest.*,
   570 U.S. 228, 133 S. Ct. 2304 (2013) ............................................................................. 7, 12

*In re American Express Fin. Advisors Secs. Litig.*,
   672 F.3d 113 (2d Cir. 2011) .................................................................................................. 7

*Aminoff & Co. LLC v. Parcel Pro, Inc.*,
   No. 21-CV-10377 (AT) (KHP), 2022 WL 987665 (S.D.N.Y. Apr. 1, 2022) ..................... 8, 9

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624, 129 S. Ct. 1896 (2009) ................................................................................. 13

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333, 131 S. Ct. 1740 (2011) ............................................................................... 6, 7

*Bischoff v. DirecTV*,
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ............................................................................... 13

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
   58 F.3d 16 (2d Cir. 1995) .............................................................................................. 11, 13

*In re Currency Conversion Fee Antitrust Litig.*,
   361 F. Supp. 2d 237 (S.D.N.Y. 2005) .................................................................................. 12

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213, 105 S. Ct. 1238 (1985) ............................................................................... 6, 7

*DirecTV, Inc. v. Imburgia*,
   577 U.S. 47, 136 S. Ct. 463 (2015) ........................................................................................ 6

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79, 91, 121 S. Ct. 513, 522 (2000) .......................................................................... 7

*Hidalgo v. Amateur Athletic Union of U.S., Inc.*,
   468 F. Supp. 3d 646 (S.D.N.Y. 2020) .................................................................................... 9

*Himber v. Live Nation Worldwide, Inc.*,
   16-CV-5001(JS) (GRB), 2018 WL 2304770 (E.D.N.Y. May 21, 2018) ........................... 8, 12

*JLM Indus., Inc. v. Stolt-Nielsen, S.A.*,
   387 F.3d 163 (2d. Cir. 2004) ................................................................................................ 12

*Katz v. Cellco P'ship*,
    794 F.3d 341 (2d Cir. 2015)..................................................................................................13

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)....................................................................................................10

*Micheli & Shel, LLC v. Grubhub Inc.*,
    No. 21-CV-4995 (JMF), 2022 WL 622828 (S.D.N.Y. Mar. 1, 2022)................................8, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1, 103 S. Ct. 927 (1983).........................................................................................11

*Nicosia v. Amazon.com, Inc.*,
    No. 1:14-CV-4513, 2017 U.S. Dist. LEXIS 133701 (E.D.N.Y. Aug. 18, 2017).....................11

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996)..................................................................................................11

*Pincaro v. Glassdoor, Inc.*,
    No 16 Civ. 6870 (ER), 2017 WL 4046317 (S.D.N.Y. Sept. 12, 2017) ..................................10

*Plazza v. Airbnb, Inc.*,
    289 F. Supp. 3d 537 (S.D.N.Y. 2018).......................................................................................9

*PPG Indus., Inc. v. Pilkington plc*,
    825 F. Supp. 1465 (D. Ariz. 1993) .......................................................................................13

*Rent-A-Center, W., Inc., v. Jackson*,
    561 U.S. 63, 130 S. Ct. 2772 (2010)....................................................................................6, 7

*Sollinger v. SmileDirectClub, LLC*,
    No. 19-CV-5977 (JPO), 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020) ..........................8, 9, 10

*Spinelli v. Nat'l Football League*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015).......................................................................................12

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*,
    559 U.S. 662, 130 S. Ct. 1758 (2010).....................................................................................7

*Stout v. Grubhub Inc.*,
    No. 21-cv-04745-EMC, 2021 WL 5758889 (N.D. Cal. Dec. 3, 2021)..................................10

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013)..................................................................................................13

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574, 80 S. Ct. 1347 (1960).....................................................................................11

*Whitt v. Prosper Funding LLC*,
   No. 1:15-CV-136-GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015) .................................10

**Statutes**

9 U.S.C. § 2 ......................................................................................................................................6

9 U.S.C. § 3 ....................................................................................................................................13

9 U.S.C. § 4 ......................................................................................................................................7

9 U.S.C. §§ 1-16 *et seq* ....................................................................................................................6

**PRELIMINARY STATEMENT**

Seven[1] named plaintiffs brought this putative class action against Defendants Grubhub Inc. ("Grubhub"), Uber Technologies, Inc. ("Uber Eats"), and Postmates Inc. ("Postmates") alleging that certain provisions in each of their standard contracts with restaurants have the effect of raising menu prices for consumers in unreasonable restraints of trade. Six of the seven named plaintiffs admit, however, that they regularly place orders on Grubhub, and have done so since the commencement of this litigation. With each order they placed, each of these named plaintiffs agreed to Grubhub's terms of use ("Terms of Use"). The Terms of Use contain a broad, mandatory binding arbitration provision squarely covering the named plaintiffs' claims in this lawsuit.

Thus, Defendants respectfully request that the Court compel individual arbitration of the six named plaintiffs' claims as required by the Federal Arbitration Act.

**FACTUAL BACKGROUND**

**I.   Plaintiffs' Class Action Claims Based on Defendants' Contracts With Restaurants**

On August 31, 2020, Plaintiffs filed their Amended Consolidated Class Action Complaint ("Complaint") challenging certain non-price discrimination clauses ("NPDs") in Defendants' contracts with its restaurants. (ECF No. 28). Plaintiffs allege that the NPDs violate Section 1 of the Sherman Act and certain state antitrust laws because they require the restaurant to offer prices on each respective Defendant's platform that are no higher than the price the restaurant offers for delivery and takeout orders made directly to the restaurant or for in-person dining. Compl. ¶¶ 56-61. Grubhub's and Uber Eats' standard agreements with its restaurants also allegedly contain

---

[1] On August 26, 2022, plaintiffs' counsel filed a stipulation dismissing the eighth named plaintiff Mia Sapienza pursuant to Rule 41(a)(1)(ii) (ECF No. 71). As a result, this memorandum and the accompanying declaration do not address Ms. Sapienza's obligation to arbitrate her claims. Grubhub reserves its right to re-file this motion in the event that Ms. Sapienza is not dismissed from the action.

1

inter-platform NPDs which prohibit restaurants in their networks from offering lower menu prices on other meal-ordering platforms. *Id.* ¶¶ 59-61.

Plaintiffs seek to represent three proposed classes explicitly defined around Defendants' contracts with restaurants. Specifically, they seek to represent: (1) a "Direct Takeout and Delivery Class" comprised of "all persons or entities in the United States who have purchased goods, for takeout from or delivery by the restaurant, *directly from a restaurant subject to any Defendant's [NPD]*," *id.* ¶ 173 (emphasis added); (2) a "Dine-In Class" comprised of "all persons or entities in the United States who have purchased goods, for dining in the restaurant, *from a restaurant subject to any Defendants' [NPD]*," *id.* ¶ 174 (emphasis added); and (3) a "Restaurant Platform Class" comprised of "all persons or entities in the United States who have purchased goods, through a non-Defendant Restaurant Platform, *from a restaurant subject to Grubhub's or Uber [Eats' NPDs]*," *id.* ¶ 175 (emphasis added).

## II.   Six Out Of Seven Named Plaintiffs Admit to Using Grubhub

The named Plaintiffs are seven individuals who "ordered meals for takeout, delivery, and dine-in directly from restaurants that sell" through at least one of Defendants' platforms. *Id.* ¶¶ 10-17. There is no dispute that six of the seven named plaintiffs in this action placed orders on Grubhub (the "Arbitrating Plaintiffs"). *See* Declaration of Eric S. Hochstadt ("Hochstadt Decl"), Ex. B. In response to Defendants' interrogatories, the Arbitrating Plaintiffs verified that they each have placed orders on Grubhub's platforms. *See id.* (Plaintiffs' Verified Interrogatory Responses, dated June 27, 2022). Those six named plaintiffs established accounts with Grubhub or Seamless[2]

---

[2] Some of the Arbitrating Plaintiffs opened accounts on Seamless North America LLC ("Seamless") and placed orders on Seamless. Grubhub merged with Seamless in 2013, and the Terms of Use for both former companies were integrated on or about October 2014. *See* Koreis Decl. ¶ 4. The term "Grubhub" as used in this motion refers to both Grubhub and Seamless.

2

prior to the commencement of this litigation and placed orders through Grubhub's platform using their accounts, including both before and during the pendency of this litigation and as recently as this week.

| Arbitrating Plaintiff | Date of Grubhub Order |
|---|---|
| Adam Bensimon | March 12, 2022 |
| John Boisi | August 22, 2022 |
| Jonathan Swaby | May 9, 2022 |
| Mariam Davitashvili | August 24, 2022 |
| Nathan Obey | August 23, 2022 |
| Philip Eliades | August 23, 2022 |

*See* Koreis Decl. ¶ 13, Hochstadt Decl. Ex. B.

### III. The Arbitrating Plaintiffs Agreed to Arbitration Every Time They Placed Orders Through Grubhub

When the Arbitrating Plaintiffs placed their orders on Grubhub's platform, they each agreed to Grubhub's Terms of Use, last updated on December 14, 2021. When users, including the Arbitrating Plaintiffs, placed an order on Grubhub, they were advised at checkout that the Terms of Use had been updated with the word "UPDATED" set forth in all capital letters, the date of the most recent update, and a blue hyperlink allowing users to view the updated terms at https://www.grubhub.com/legal/terms-of-use. Koreis Decl. ¶ 10. Additionally, Grubhub ran a popup on the Terms of Use web page informing visitors that the Terms of Use had been updated, and requiring visitors to click either "Got it" or to close the popup in order to proceed to the page. This popup is still active today for any first time visitor to the site. Koreis Decl. ¶ 12, Exs. E, F.

The first page of Grubhub's Terms of Use expressly provide in all capitalized text that,

> BY ENTERING THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTOOD, AND AGREE TO BE BOUND BY, ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT AND HAVE TAKEN TIME TO

3

> CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

Grubhub users also affirmed that they "agree[d] to be bound by the Updated Terms, and if [the user] d[id] not agree to the Updated Terms, [the user] will stop using the Platform and/or accessing the Services." Koreis Decl. Ex. D (Grubhub's Terms of Use).

Grubhub also notified its users about these updated Terms of Use by email on December 14, 2021. The email advised Grubhub users, including the Arbitrating Plaintiffs, that Grubhub "made changes to [its] dispute resolution and arbitration agreement, which explains how legal disputes are handled." Koreis Decl. ¶ 12, Ex. G. The Terms of Use provide that they "will govern any disputes between you and Grubhub, even if the dispute arises or involves facts dated before the 'Effective' date of the Updated Terms." Koreis Decl. ¶ 11, Ex. D. Since each of the Arbitrating Plaintiffs placed orders on Grubhub in 2022, they are bound by the December 14, 2021 Terms of Use.

## IV. Grubhub's Terms of Use and Dispute Resolution Provision Require Arbitration

On the first page of the Terms of Use, customers are expressly advised in all capitalized text that the terms contain a binding arbitration clause:

> IMPORTANT: PLEASE REVIEW THE "DISPUTE RESOLUTION" SECTION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH GRUBHUB, NO MATTER WHEN ARISING OR ASSERTED, THROUGH BINDING INDIVIDUAL ARBITRATION. YOU ACKNOWLEDGE AND AGREE THAT YOU AND GRUBHUB EACH WAIVE THE RIGHT TO A TRIAL BY JURY. IN ARBITRATION, THERE IS NO JUDGE OR JURY AND THERE IS MORE CIRCUMSCRIBED DISCOVERY AND APPELLATE REVIEW THAN THERE WOULD BE IN COURT. YOU ALSO WAIVE YOUR RIGHT TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING AGAINST GRUBHUB, WHETHER NOW PENDING OR FILED IN THE FUTURE. THERE ARE PROPOSED CLASS ACTIONS OR REPRESENTATIVE ACTION PROCEEDINGS PENDING AGAINST GRUBHUB, AND THIS

> AGREEMENT APPLIES TO THEM UNLESS YOU OPT OUT AS DESCRIBED IN THE "DISPUTE RESOLUTION" SECTION BELOW.

Koreis Decl. ¶ 14, Ex. D. The Dispute Resolution Section, which itself appears with an enlarged heading in bold and all capitals, begins with the following statement in all capitals:

> PLEASE READ THIS "DISPUTE RESOLUTION" SECTION CAREFULLY. IT LIMITS THE WAYS YOU CAN SEEK RELIEF FROM GRUBHUB AND REQUIRES YOU TO ARBITRATE DISPUTES ON AN INDIVIDUAL BASIS.

*Id.* The binding arbitration provision provides that users would arbitrate any dispute with Grubhub, regardless of whether or not it relates to a user's use of the platform:

> II. Mutual Arbitration Agreement. You and Grubhub agree that all claims, disputes, or disagreements that may arise out of the interpretation or performance of this Agreement or payments by or to Grubhub, or that in any way relate to your use of the Platform, the Materials, the Services, and/or other content on the Platform, your relationship with Grubhub, or any other dispute with Grubhub, (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory) (each, a "Dispute") shall be submitted exclusively to binding arbitration. Dispute shall have the broadest possible meaning. This includes claims that arose, were asserted, or involve facts occurring before the existence of this or any prior Agreement as well as claims that may arise after the termination of this Agreement. This Mutual Arbitration Agreement is intended to be broadly interpreted.

*Id.* Additionally, Part III of the Dispute Resolution Section contains a conspicuous class action waiver, which reads in all capitals:

> III. Class Action and Collective Relief Waiver. YOU ACKNOWLEDGE AND AGREE THAT, TO THE MAXIMUM EXTENT ALLOWED BY LAW . . . THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY DISPUTE TO BE ARBITRATED OR LITIGATED ON A CLASS, JOINT, COLLECTIVE OR CONSOLIDATED BASIS OR IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC, OR AS A PRIVATE ATTORNEY GENERAL OR FOR PUBLIC INJUNCTIVE RELIEF. UNLESS BOTH YOU AND GRUBHUB OTHERWISE AGREE IN WRITING, THE ARBITRATOR MAY NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIMS (EXCEPT AS SET OUT IN SECTION VII BELOW), AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF ANY CLASS, JOINT,

>COLLECTIVE OR REPRESENTATIVE PROCEEDING. THE ARBITRATOR MAY AWARD RELIEF (INCLUDING ANY DECLARATORY OR INJUNCTIVE RELIEF) ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO RESOLVE AN INDIVIDUAL PARTY'S CLAIM.

*Id.*

## LEGAL STANDARD

Congress enacted the Federal Arbitration Act, 9 U.S.C. §§ 1-16 *et seq*. (the "FAA") to ensure that written agreements "to settle by arbitration a controversy thereafter arising out of such contract, . . . shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. The FAA reflects both a "liberal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745 (2011), and the fundamental underlying principle that "arbitration is a matter of contract." *Rent-A-Center, W., Inc., v. Jackson*, 561 U.S. 63, 67, 130 S. Ct. 2772, 2776 (2010). The Supreme Court has consistently emphasized that courts are required to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 1242 (1985), and there is a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary[.]" *AT&T Mobility LLC*, 563 U.S. at 346, 131 S. Ct. at 1749. Furthermore, Grubhub's Terms of Use explicitly state that "[t]he Federal Arbitration Act will govern the interpretation and enforcement of the 'Dispute Resolution' section." Koreis Decl. Ex. D.

The Supreme Court also has made clear that express class action waivers, like the one in Grubhub's Terms of Use, are valid and enforceable. *See DirecTV, Inc. v. Imburgia*, 577 U.S. 47, 55, 136 S. Ct. 463, 469 (2015) (enforcing express class action waiver after finding that the FAA preempted California state law rendering class-arbitration waivers unenforceable); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S. Ct. 2304, 2309 (2013) (enforcing express

6

class action waiver after finding that "[n]o contrary congressional command" overrode the overarching principle that "arbitration is a matter of contract"); *AT&T Mobility LLC*, 563 U.S. at 341-46 (enforcing express class action waiver in consumer contract because the FAA preempts California's judicial rule concerning the unconscionability of such waivers); *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 685, 130 S. Ct. 1758, 1775 (2010) (holding that a contract silent with respect to class arbitration cannot be read to compel the parties to arbitrate on a class-wide basis).

In order to determine whether an action should be sent to arbitration on an individual basis, courts in the Second Circuit consider: "(1) whether the parties have entered into a valid agreement to arbitrate, and if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re American Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). If these conditions are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter*, 470 U.S. at 218, 105 S. Ct. at 1241. *See also* 9 U.S.C. § 4 ("upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement"); *Rent-A-Center*, 561 U.S. at 68, 130 S. Ct. at 2776 ("The court shall order arbitration upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue") (internal quotations omitted). Generally, "[t]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 522 (2000).

# ARGUMENT

**I. Each Arbitrating Plaintiff Entered Into a Binding Contract with Grubhub to Arbitrate This Dispute**

The Arbitrating Plaintiffs expressly agreed to arbitrate any disputes with Grubhub, including this dispute. Whether an agreement to arbitrate exists is a question of state contract law. *See Aminoff & Co. LLC v. Parcel Pro, Inc.*, No. 21-CV-10377 (AT) (KHP), 2022 WL 987665, at *3 (S.D.N.Y. Apr. 1, 2022) (applying New York law and granting motion to compel arbitration). Grubhub's Terms of Use provide that the terms are governed by New York law. *See* Koreis Decl. Ex. D. "Under New York law, the touchstone of contract is [m]utual manifestation of assent, whether by written or spoken word or by conduct." *Sollinger v. SmileDirectClub, LLC*, No. 19-CV-5977 (JPO), 2020 WL 774135, at *2 (S.D.N.Y. Feb. 18, 2020) (quotations omitted). "[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which a court can infer acceptance." *Himber v. Live Nation Worldwide, Inc.*, 16-CV-5001(JS) (GRB), 2018 WL 2304770, at *3 (E.D.N.Y. May 21, 2018) (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x. 22, 25 (2d Cir. 2010)); *see also Starke v. Gilt Groupe*, Inc., No. 13 Civ. 5497(LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (holding that plaintiff agreed to Terms of Membership where he was directed "exactly where to click in order to review those terms," regardless of whether he actually reviewed them); *Micheli & Shel, LLC v. Grubhub Inc.*, No. 21-CV-4995 (JMF), 2022 WL 622828, at *6 (S.D.N.Y. Mar. 1, 2022) (accepting that plaintiff agreed to Grubhub's Terms of Use).

Here, each of the Arbitrating Plaintiffs entered into a valid agreement to arbitrate this dispute on an individual basis. The Arbitrating Plaintiffs assented to Grubhub's Terms of Use each and every time they placed an order through Grubhub. When they placed their orders, the

Arbitrating Plaintiffs were expressly notified that, "[b]y placing your order you agree to Grubhub's terms of use." The terms of the agreement were also easily accessible and called out to each of the Arbitrating Plaintiffs' attention because the phrase "Terms of Use" is hyperlinked to the full text of the agreement. Koreis Decl. ¶ 10, Exs. B, C. When the Arbitrating Plaintiffs clicked on the hyperlink, they were immediately brought to the very first page of Grubhub's Terms of Use, which contains the Dispute Resolution Section requiring the parties to arbitrate their claims. *See supra*, at 3. Grubhub also provided the Arbitrating Plaintiffs with notice of Grubhub's Terms of Use by running a pop-up informing them of the updates to the Terms of Use, and by emailing customers with notice of the updated Terms of Use. *See* Koreis Decl. ¶ 12.

Courts consistently enforce arbitration provisions when consumers complete an online purchase knowing the transaction is subject to terms and conditions. *See, e.g. Sollinger*, 2020 WL 774135 at *2 (holding that plaintiff entered into a binding agreement to arbitrate where he checked box agreeing to Terms and Conditions prior to purchase); *Aminoff & Co. LLC*, 2022 WL 987665, at *4 (holding that plaintiff agreed to arbitrate claims when he assented to Terms and Conditions); *Hidalgo v. Amateur Athletic Union of U.S., Inc.*, 468 F. Supp. 3d 646, 658 (S.D.N.Y. 2020) (holding that plaintiff had entered into enforceable agreement to arbitrate where terms of use could be "accessed through the hyperlinks conspicuously displayed" on membership application page); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 551 (S.D.N.Y. 2018) (holding clickwrap agreement enforceable and compelling arbitration); *cf.*, *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-cv-4570 (LAK), 2018 WL 671258, at *1 (S.D.N.Y. Jan. 31, 2018) (Kaplan, J.) (adopting report and recommendation of magistrate judge finding that "sign-in-wrap" agreement was valid agreement to arbitrate). Indeed, "[i]n New York, clickwrap agreements are valid and enforceable

9

contracts." *Whitt v. Prosper Funding LLC*, No. 1:15-CV-136-GHW, 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015).

Further, the Second Circuit and courts in the District regularly enforce binding arbitration provisions where the terms of service are clear and conspicuous, as they are here. S*ee Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77-78 (2d Cir. 2017) ("Moreover, a reasonably prudent smartphone user knows that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found"); *Mallh v. Showtime Networks Inc.*, No. 17cv6549(DLC), 2017 WL 5157247, at *5 (S.D.N.Y. Nov. 7, 2017) (granting motion to compel arbitration where Showtime's online Terms of Use "arbitration clause and class action waiver was reasonably conspicuous and Mallh unambiguously manifested assent"); *Pincaro v. Glassdoor, Inc.*, No 16 Civ. 6870 (ER), 2017 WL 4046317, at *6 (S.D.N.Y. Sept. 12, 2017) (granting motion to compel arbitration where Terms of Use included a blue underlined hyperlink and plaintiffs received email notice of changes to the Terms); *Gilt Groupe*, 2014 WL 1652225, at *3 (holding that plaintiff agreed to Terms of Membership when he clicked "Shop Now" button on website and granting motion to compel arbitration). Here, the Arbitrating Plaintiffs were repeatedly placed on notice of Grubhub's Terms of Use and nevertheless continued to place orders on Grubhub. Accordingly, the Arbitrating Plaintiffs accepted Grubhub's Terms of Use, including the provision compelling individual arbitration of any dispute. *See Sollinger*, 2020 WL 774135, at *3; *cf.*, *Stout v. Grubhub Inc.*, No. 21-cv-04745-EMC, 2021 WL 5758889, at *11 (N.D. Cal. Dec. 3, 2021) (accepting that plaintiff agreed to Grubhub's Terms of Use).

## II. The Arbitrating Plaintiffs' Claims Fall Within the Broad Scope of Grubhub's Agreement

Once it is clear, as it is here, that the parties have an agreement to arbitrate on an individual basis, "any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941-42 (1983). Indeed, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 585, 80 S. Ct. 1347, 1354 (1960); *see also In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 486 (S.D.N.Y. 2013) ("[P]ursuant to federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (quotations omitted).

Grubhub's arbitration clause is broad in scope, requiring each of the Arbitrating Plaintiffs to arbitrate "*all claims, disputes, or disagreements*" with Grubhub. Koreis Decl. ¶ 14, Ex. D (emphasis added); *see Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (describing arbitration provisions stating "[a]ny claim or controversy arising out of or relating to th[e] agreement" as the "paradigm of a broad clause"); *Nicosia v. Amazon.com, Inc.*, No. 1:14-CV-4513, 2017 U.S. Dist. LEXIS 133701, at *8, *42-43 (E.D.N.Y. Aug. 18, 2017) (granting motion to compel arbitration in putative consumer class action, where the arbitration clause covered "[a]ny dispute or claim relating in any way to [consumer] visit[s] to Amazon.com").

Moreover, the arbitration provision in Grubhub's Terms of Use covers disputes relating to each Arbitrating Plaintiff's "*relationship with Grubhub*," and "*any [] dispute with Grubhub*." Koreis Decl. ¶ 14, Ex. D (emphasis added). The Second Circuit has found such broad language regarding the scope of an arbitration agreement to encompass "any and all" disputes. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (upholding grant of motion to compel arbitration where arbitration agreement stated that "any and all" controversies were to be determined by arbitration).

The Arbitrating Plaintiffs' claims plainly fall within the scope of one of the three broad categories of disputes they each agreed to arbitrate individually with Grubhub. The Arbitrating

11

Plaintiffs have admittedly ordered from restaurants through Grubhub, *see supra* at 2, and they allege that Grubhub's agreements with restaurants on its platform caused them to overpay for their meals when they ate food in person, or through takeout or delivery, or through another platform. First, Grubhub's Terms of Use cover any dispute that "in any way relate[s] to your use of the Platform[.]" Here, the Arbitrating Plaintiffs have used Grubhub's platform and claim that Grubhub's NPD with restaurants on its platform led to increased prices in those restaurants. *See Himber*, 2018 WL 2304770, at *6 (holding that claim by consumer regarding allegedly deceptive fees for tickets purchased in person at box office were not outside scope of arbitration clause covering "any dispute or claim relating in any way" to use of LiveNation's website). Second, this dispute relates to the Arbitrating Plaintiffs' relationship with Grubhub because they are alleging supracompetitive prices at restaurants from which they order meals for takeout, delivery, and dine-in, only where those restaurants have a contract with Grubhub. Third, this dispute falls squarely into the category of "any other dispute with Grubhub (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory)."

Courts routinely find that antitrust claims fall within the scope of a broad arbitration agreement. *See Italian Colors*, 570 U.S. at 233-34, 133 S. Ct. at 2309-10 (applying arbitration and class action waiver clauses to antitrust claims); *JLM Indus., Inc. v. Stolt-Nielsen, S.A.*, 387 F.3d 163, 178 (2d. Cir. 2004) (compelling arbitration of horizontal price fixing claims); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 259 (S.D.N.Y. 2005) (compelling arbitration of claims that collusion by defendants led to higher foreign currency conversion fees disclosed in cardholder agreements); *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 105 (S.D.N.Y. 2015) (compelling arbitration of Sherman Act claims, which were subject to arbitration because claims "touch[ed] matters covered by the parties' contracts"); *In re A2P SMS Antitrust Litig.*, 972 F. Supp.

2d at 488 (holding that non-signatory defendants could enforce arbitration agreement and compelling arbitration of refusal to deal claims); *see also Bischoff v. DirecTV*, 180 F. Supp. 2d 1097, 1106 (C.D. Cal. 2002) (compelling arbitration of monopolization and conspiracy claims); *PPG Indus., Inc. v. Pilkington plc*, 825 F. Supp. 1465, 1478 (D. Ariz. 1993) (compelling arbitration of monopolization claims based on anticompetitive use of license agreement).

Further, Grubhub's arbitration clause in its Terms of Use does not permit class actions. *See* Koreis Decl. ¶ 14, Ex. D. Courts have routinely enforced class action waivers in arbitration agreements. *See, e.g.*, *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013) (class action waivers must be enforced absent a "contrary congressional command"); *Micheli & Shel, LLC v. Grubhub Inc.*, No. 21-CV-4995 (JMF), 2022 WL 622828, at *6 (S.D.N.Y. Mar. 1, 2022) (upholding class action waiver in putative class action alleging claims relating to charges on Grubhub and other platforms). Since it is clear that the broad arbitration agreement in Grubhub's Terms of Use covers the Arbitrating Plaintiffs' claims, the Court should compel arbitration on an individual basis. *See Collins*, 58 F.3d at 20.

### III. The Arbitrating Plaintiffs' Claims Must be Stayed Pending Completion of Arbitration

Under the FAA, upon application of a party, a court "shall" stay further proceedings in a legal action if it finds that "any issue" in the case should be referred to arbitration under an agreement in writing for the arbitration. 9 U.S.C. § 3. *See also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 625, 129 S. Ct. 1896, 1899 (2009) ("Section 3 of the [FAA] entitles litigants in federal court to a stay of any action that is referable to arbitration under an agreement in writing") (quotations omitted); *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[W]e conclude that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested[]"); *see also In re*

*A2P SMS Antitrust Litig.*, 972 F. Supp. 2d at 500 (granting motion to compel arbitration and staying the action pending the outcome of the arbitration).  Given that each of the Arbitrating Plaintiffs and Defendants are mutually bound to arbitration, the Court must stay this litigation with respect to these named plaintiffs' claims pending conclusion of their individual arbitrations.

## **CONCLUSION**

For the foregoing reasons, Defendant Grubhub Inc. respectfully requests that the Court grant its Motion to Compel Arbitration of Certain Named Plaintiffs' Claims.

Dated: August 26, 2022
      New York, New York

*/s/ Eric S. Hochstadt*
David J. Lender
Eric S. Hochstadt
Luna Ngan Barrington
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
david.lender@weil.com
eric.hochstadt@weil.com
luna.barrington@weil.com

*Counsel for Defendant Grubhub Inc.*