# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIAM DAVITASHVILI, ADAM BENSIMON, MIA SAPIENZA, PHILIP ELIADES, JONATHAN SWABY, JOHN BOISI, NATHAN OBEY, and MALIK DREWEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GRUBHUB INC., UBER TECHNOLOGIES, INC., and POSTMATES INC.,<br><br>Defendants. | Case No. 1:20-cv-03000 (LAK) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION BY DEFENDANTS UBER TECHNOLOGIES, INC. AND POSTMATES, LLC**

COVINGTON & BURLING LLP

The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1097

One City Center
850 Tenth Street NW
Washington, D.C. 20001
Tel: (202) 662-5429

*Counsel for Defendants*
*Uber Technologies, Inc. and Postmates, LLC*

Table of Contents

Table of Authorities ................................................................................................................ ii

I. PRELIMINARY STATEMENT ................................................................................... 1

II. BACKGROUND ........................................................................................................... 2

    A. Uber and Postmates ............................................................................................. 2

    B. The Arbitration Plaintiffs agreed to binding arbitration and class action waivers when they created their user accounts. ...................................................... 2

    C. The Arbitration Plaintiffs agreed to Uber's updated Terms of Use, including the 2021 Uber Terms. ............................................................................. 4

    D. The 2021 Uber Terms include an arbitration provision, a class action waiver, and a delegation clause. ............................................................................. 6

    E. Procedural History ............................................................................................... 8

III. ARGUMENT ................................................................................................................ 8

    A. The Arbitration Plaintiffs Agreed to Be Bound by Uber's Terms, Which Include Valid Arbitration Agreements. ................................................................. 9

        1. Bensimon Entered Into a Valid Arbitration Agreement Under California Law. ....................................................................................... 10

        2. Boisi, Davitashvili, Eliades, Obey, and Swaby Entered Into Valid Arbitration Agreements Under New York Law. ..................................... 10

    B. Under Uber's Delegation Clause, the Arbitrator Must Decide All "Gateway" Arbitrability Issues. ............................................................................. 13

    C. If the Court finds that it has Jurisdiction to Consider Arbitrability Issues, it Should Find that the Arbitration Plaintiffs' Claims Against Uber and Postmates Must Be Arbitrated on an Individual Basis. ........................................ 15

        1. The Arbitration Plaintiffs' Claims Fall Within the Scope of Arbitration Agreements. .......................................................................... 15

        2. The Arbitration Plaintiffs Must Pursue Their Claims on an Individual, Non-Class Basis. ................................................................... 16

    D. This Action Should Be Stayed in its Entirety Pending Arbitration. ..................... 17

IV. CONCLUSION ............................................................................................................. 18

Table of Authorities

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228, 133 S. Ct. 2304 (2013)..................................................................16

*In re Am. Express Fin. Advisors Sec. Litig.*,
    672 F.3d 113 (2d Cir. 2011)...........................................................................15

*Aminoff & Co LLC v. Parcel Pro, Inc.*,
    No. 21-CV-10377 (AT)(KHP), 2022 WL 987665 (S.D.N.Y. Apr. 1, 2022)..........................11

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333, 131 S. Ct. 1740 (2011)............................................................9, 18

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643, 106 S. Ct. 1415 (1986)................................................................15

*Binder v. Aetna Life Ins. Co.*,
    75 Cal. App. 4th 832 (1999) ...........................................................................10

*Camilo v. Uber Techs., Inc.*,
    No. 17 Civ. 9508 (AKH), 2018 WL 2464507 (S.D.N.Y. May 31, 2018) ..............................15

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585, 111 S. Ct. 1522 (1991)................................................................10

*Contec Corp. v. Remote Sol., Co.*,
    398 F.3d 205 (2d Cir. 2005)............................................................................14

*DIRECTV, Inc. v. Imburgia*,
    577 U.S. 47, 136 S. Ct. 463 (2015)...................................................................17

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)..................................................................................17

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)................................................................11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019)................................................................................9, 13

*Hicks v. Uber Techs., Inc.*,
    No. CGC-21-592316 (Cal. Super. Ct. Jan. 13, 2022) ............................................14

*Hines v. Overstock.com, Inc.*,
    380 F. App'x 22 (2d Cir. 2010) .......................................................................11

*Kwik Ticket Inc. v. Spiewak*,
No. 20-cv-01201 (FB), 2022 WL 3446316 (E.D.N.Y. Aug. 17, 2022)....................................18

*Leusch v. Uber Techs., Inc.*,
No. 3:19-CV-00772-L-JLB, 2019 WL 5594923 (S.D. Cal. Oct. 29, 2019) ...........................14

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017).......................................................................................................9, 10

*Micheli & Shel, LLC v. Grubhub Inc.*,
No. 21-CV-4995 (JMF), 2022 WL 622828 (S.D.N.Y. Mar. 1, 2022) .....................................17

*Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
26 N.Y.3d 659 (2016) ................................................................................................................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1, 103 S. Ct. 927 (1983)...........................................................................................8, 15

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ..................................................................................................10

*O'Callaghan v. Uber Corp. of Cal.*,
No. 17 Civ. 2094 (ER), 2018 WL 3302179 (S.D.N.Y. July 5, 2018)......................................14

*PaineWebber Inc. v. Bybyk*,
81 F.3d 1193 (2d Cir. 1996)...............................................................................................13, 14

*Sollinger v. SmileDirectClub, LLC*,
No. 19-CV-5977 (JPO), 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020) ...................................11

*Spinelli v. Nat'l Football League*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) .........................................................................................16

*Starke v. Gilt Groupe, Inc.*,
No. 13 Civ. 5497 (LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) .................................11

*Sutherland v. Ernst & Young LLP*,
726 F.3d 290 (2d Cir. 2013).....................................................................................................17

*Williamson v. Alexander*,
No. 508671/2021 (N.Y. Sup. Ct. Aug. 4, 2022) ......................................................................11

## Statutes

9 U.S.C. § 2..................................................................................................................................9

9 U.S.C. § 3................................................................................................................................17

## I.     PRELIMINARY STATEMENT

From the time they created user accounts and throughout their continued use of services provided by Uber Technologies, Inc. ("Uber") and Postmates, LLC ("Postmates"),[1] plaintiffs Adam Bensimon, John Boisi, Mariam Davitashvili, Philip Eliades, Nathan Obey, and Jonathan Swaby (the "Arbitration Plaintiffs") agreed to resolve any disputes they may have with Uber and Postmates on an individual, non-class basis through binding arbitration.  For years,  including at the time they joined this action, each of the Arbitration Plaintiffs were bound by Uber's Terms of Use and/or Postmates' Terms of Service, both of which contain three provisions relevant to this Motion:  (1) a clear and conspicuous arbitration agreement, (2) a class action waiver, and (3) a delegation clause requiring that any threshold questions as to the enforceability of the arbitration agreement or its applicability to particular disputes must be resolved in arbitration.  Since the commencement of this litigation (and after Uber's acquisition of Postmates), the Arbitration Plaintiffs have agreed to Uber's updated Terms of Use (collectively, the "Terms") that contain language incorporating those same three provisions.  By filing suit and continuing to proceed with their action in this Court, the Arbitration Plaintiffs have ignored their contractual obligations to resolve any dispute they have with Uber and Postmates on an individual basis in arbitration.

Under the Federal Arbitration Act ("FAA") and settled case law, the Court should require the Arbitration Plaintiffs to pursue their claims against Uber and Postmates in arbitration as mandated by the governing agreements.  The Court should also exercise its discretion to stay plaintiff Malik Drewey's similar claims against Uber and Postmates, pending a resolution of the

---

[1] The entity formerly known as Postmates Inc. was acquired by Uber on December 1, 2020. Postmates, LLC became a wholly-owned subsidiary of Uber at that time.  Use of the term "Postmates" for events prior to December 1, 2020 herein refers to the entity formerly known as Postmates Inc.

Arbitration Plaintiffs' individual arbitrations, to conserve judicial resources, avoid inconsistent outcomes, and inform the subsequent disposition of his claims.

## II.    BACKGROUND

### A.    Uber and Postmates

Uber provides online marketplaces via the internet and mobile applications (including Uber and Uber Eats) on which users, businesses, and couriers connect with independent transportation providers or restaurants and other merchants to facilitate the purchase, fulfillment, and delivery of food and other goods.  Declaration of Jennifer Sullivan ("Sullivan Decl.")[2] ¶ 5.  An Uber user account will provide an individual with access to both the Uber Eats App and the Uber App that is most commonly used for transportation services.  *See id.* ¶ 7.  Postmates is a similar online marketplace that provides, among other things, meal delivery services.  *See id.* ¶ 5.  Postmates operated as an independent company until December 1, 2020, when it was acquired by, and became a wholly-owned subsidiary of, Uber.  *See id.* ¶ 3.  A potential user must create an Uber or Postmates account through the respective websites or applications.

### B.    The Arbitration Plaintiffs agreed to binding arbitration and class action waivers when they created their user accounts.

To create an account and use the services offered by Uber and Postmates (the "Services"), all users must agree to the terms of use governing the parties' relationship. *Id.* ¶ 7.  The Arbitration Plaintiffs voluntarily created user accounts with Uber and/or Postmates at various times between 2014 and 2018, as follows:

- Plaintiff Adam Bensimon ("Bensimon") created an Uber account on October 11, 2014 and agreed to the May 2013 Uber Terms of Use, which were in effect at that time.  *Id.*  ¶¶ 25−27; Ex. D at p. 2; Ex. E at pp. 2−9.

---

[2] The Sullivan Declaration is annexed to the accompanying Declaration of Andrew A. Ruffino ("Ruffino Decl.").

- Plaintiff John Boisi ("Boisi") created an Uber account on February 2, 2014 and agreed to the May 2013 Uber Terms of Use, which were in effect at that time. *Id.* ¶¶ 25−27; Ex. D at p. 3; Ex. E at pp. 2−9. Boisi also created a Postmates account on May 6, 2015 and agreed to the April 2015 Postmates Terms of Service, which were in effect at that time. *Id.* ¶¶ 9−10; Ex. A at p. 2; Ex. B at pp. 2−7.

- Plaintiff Mariam Davitashvili ("Davitashvili") created an Uber account on February 14, 2016 and agreed to the January 2016 Uber Terms of Use, which were in effect at that time. *Id.* ¶¶ 25−27; Ex. D at p. 4; Ex. E at pp. 19−31. Davitashvili also created a Postmates account on March 25, 2016 and agreed to the March 2016 Postmates Terms of Service, which were in effect at that time. *Id.* ¶¶ 9−10; Ex. A at p. 3; Ex. B at pp. 8−15.

- Plaintiff Philip Eliades ("Eliades") created an Uber account on June 3, 2014 and agreed to the May 2013 Uber Terms of Use, which were in effect at that time. *Id.* ¶¶ 25−27; Ex. D at p. 5; Ex. E at pp. 2−9.

- Plaintiff Nathan Obey ("Obey") created an Uber account under the alias Nate Obey on March 7, 2015 and agreed to the February 2015 Uber Terms of Use, which were in effect at that time. *Id.* ¶¶ 25−27; Ex. D at p. 6; Ex. E at pp. 10−18. Obey also created a Postmates account on August 19, 2016 and agreed to the August 2016 Postmates Terms of Service, which were in effect at that time. *Id.* ¶¶ 9−10; Ex. A at p. 4; Ex. B at pp. 16−28.

- Plaintiff Jonathan Swaby ("Swaby") created an Uber account under the alias Jon Swaby on July 14, 2018 and agreed to the December 2017 Uber Terms of Use, which were in effect at that time. *Id.* ¶¶ 25−27; Ex. D at p. 7; Ex. E at pp. 32−42. Swaby also created a Postmates account on December 8, 2018 and agreed to the July 2018 Postmates Terms of Service, which were in effect at that time. *Id.* ¶¶ 9−10; Ex. A at p. 5; Ex. B at pp. 29−61.

While there were some variations in the language used in the terms of use in effect at different times, all relevant agreements contained materially similar provisions (a) requiring disputes to be resolved in arbitration on an individual basis, (b) waiving users' abilities to bring class actions, and (c) permitting Uber and Postmates to modify the terms at any time. *See* Sullivan Decl. ¶¶ 11−12, 27−28; *see* Exs. B, E. The Arbitration Plaintiffs agreed that continued use of or access to the Uber and Postmates Services following any future modifications to the Terms would constitute consent to such changes. *Id.* ¶¶ 11, 27.

### C.     The Arbitration Plaintiffs agreed to Uber's updated Terms of Use, including the 2021 Uber Terms.

Following the creation of each Arbitration Plaintiff's account, Uber and Postmates periodically updated the terms of use for the respective online marketplaces.  The terms of use in effect immediately prior to the commencement of this action—the March 2020 Uber Terms of Use and the December 2019 Postmates Terms of Service—included similar arbitration language, a class action waiver, and modification provisions, as well as delegation clauses, which required an arbitrator to resolve any threshold questions regarding the application or enforcement of the arbitration provisions.  *See id.* ¶¶ 15−16, 31−32; Ex. B at pp. 63, 86−; Ex. F. at pp. 3−4.

Uber has also updated these Terms since the Arbitration Plaintiffs initially commenced this action.  After the Postmates acquisition was completed, Uber again updated the Terms applicable to users for its online marketplaces, including Uber, Uber Eats, and Postmates.  Moreover, between March 17, 2021, and mid-April 2021, Postmates sent emails to Postmates users informing them that the Postmates App was being updated, and that their accounts would now be linked with Uber.  The emails contained a blue hyperlink to "Terms of Use," and expressly noted that there were "updates to the Arbitration Agreement."  *Id.* ¶ 21; Ex. C at p. 3.  Subsequent versions of the Terms all continued to specify dispute resolution procedures that included an arbitration provision, a class action waiver, and a delegation clause.  *Id.* ¶¶ 19, 20, 23, 37, 42; *see* Ex. F.  This included updates that became effective in July and December 2021 (together, the "2021 Uber Terms").  *Id.* ¶¶ 23, 33, 35; *see* Ex. F at pp. 35−74.  For the December 2021 update to the Uber Terms, Uber notified users of those updated Terms through an in-app blocking pop-up screen that appeared when the user opened an Uber or Uber Eats App.  *Id.* ¶ 39; *see* Ex. G.  The pop-up screen had a header that stated: "We've updated our terms," and, in bigger text, "We encourage you to read our updated Terms in full."  *Id.*  The pop-up screen provided a hyperlink to Uber's Terms of Use, which

included an arbitration provision, and Uber's Privacy Notice. *Id*. The words "Terms of Use" and "Privacy Notice" were displayed in bright blue text that contrasted with the other font colors, indicating they were hyperlinks. *Id*. When the user clicked either hyperlink, the Terms of Use or Privacy Notice, respectively, were displayed. *Id*. To proceed past the pop-up screen, users were required to affirmatively check a box labeled "By checking the box, I have reviewed and agreed to the Terms of Use and acknowledge the Privacy Notice" and click "Confirm." *Id*.

The 2021 Uber Terms "expressly supersede[d] prior agreements or arrangements … regarding the use of Services" by users of Uber and its subsidiaries, including both Uber Eats and Postmates users. *Id*. ¶¶ 19, 23, 36; Ex. F at pp. 36, 55. Similar to previous versions, the 2021 Uber Terms stated that by "accessing or using" the Services, the user confirmed agreement to be bound by those Terms. *Id*. All Arbitration Plaintiffs consented to the 2021 Uber Terms by subsequently using the Uber or Postmates applications and/or by expressly consenting to the December 2021 Uber Terms by affirmatively checking a box stating that the user "reviewed and agreed to the Terms of Use" and then clicking "Confirm." *See id*. ¶¶ 39–41. The assent of each Arbitration Plaintiff to the 2021 Uber Terms is detailed below:

| Plaintiff | Consent Through Usage | Date of Express Consent to Dec. 2021 Uber Terms | Sullivan Declaration Reference |
|---|---|---|---|
| Adam Bensimon | Used Uber account as recently as November 18, 2021. | - | Ex. H at p. 3 |
| John Boisi | Used Uber account as recently as August 5, 2022. | December 16, 2021 | Ex. D at p. 3; Ex. H at p. 9 |
| Mariam Davitashvili | Used Uber account as recently as August 18, 2022. | December 20, 2021 | Ex. D at p. 4; Ex. H at p. 84 |
| Philip Eliades | Used Uber account as recently as August 1, 2022. | December 27, 2021 | Ex. D at p. 5; Ex. H at p. 192 |
| Nathan Obey | Used Uber account as recently as July 31, 2022. | January 29, 2022 | Ex. D at p. 6; Ex. H at p. 200 |

| Plaintiff | Consent Through Usage | Date of Express Consent to Dec. 2021 Uber Terms | Sullivan Declaration Reference |
|---|---|---|---|
| Jonathan Swaby | Used Uber account as recently as August 15, 2022. | January 8, 2022 | Ex. D at p. 7; Ex. H at p. 216 |

**D.     The 2021 Uber Terms include an arbitration provision, a class action waiver, and a delegation clause.**

The 2021 Uber Terms contain an arbitration agreement, a class action waiver, and a delegation clause.  Sullivan Decl. ¶¶ 19, 20, 23, 36, 37; *see* Ex. F at pp. 35−74.  These provisions plainly preclude the Arbitration Plaintiffs from prosecuting this putative class action in this Court.  The very first section of the 2021 Uber Terms conspicuously advised the Arbitration Plaintiffs, in a single paragraph with all-capital letters that the Terms contained an Arbitration Agreement:

> IMPORTANT: PLEASE BE ADVISED THAT THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW).  PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION (AS DESCRIBED IN SECTION 2 BELOW).  BY ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.

*Id.* ¶¶ 19, 23, 36; Ex. F at pp. 37, 55−56 (capitalization in original).

The beginning of the second section of the 2021 Uber Terms, which is clearly labeled "Arbitration Agreement," reiterated the requirement to resolve any claims in arbitration on an individual basis, as set forth in that Agreement:

> By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement[.]

*Id.* ¶¶ 20, 23, 37; Ex. F at pp. 37, 56.

The 2021 Uber Terms also included express class action waivers. *See id* ¶¶ 20, 23, 37; Ex. F at pp. 38, 57. Subsection 2 of the December 2021 Arbitration Agreement contained the following language:

> (2) **Class Action Waiver:** You acknowledge and agree that any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, consolidated, and/or representative action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any class, collective, coordinated, and/or representative action, or to award relief to anyone but the individual in arbitration. The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. Notwithstanding anything else in this agreement, this Class Action Waiver does not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims.

*Id.* ¶ 37; Ex. F at p. 57.

The Arbitration Agreement also empowers the arbitrator to decide a broad set of issues. It includes a delegation clause which states that the arbitrator shall have exclusive authority to resolve "any dispute[s]" that "relat[e] to the interpretation, applicability, enforceability[,] or formation of this Arbitration Agreement," including "any claim that all or any part of this Arbitration Agreement is void or voidable" and "all threshold arbitrability issues" including whether the Terms "are applicable, unconscionable[,] or illusory and any defense to arbitration[.]" *Id.* ¶¶ 20, 23, 37; Ex. F at pp. 39, 59. With limited exceptions not relevant here, the Arbitration Agreement in the December 2021 Terms of Use (the "December 2021 Uber Terms") further explains that the following would be "settled by binding individual arbitration … and not … a court of law":

> [A]ny dispute, claim, or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof; (ii) your access to or use of the Services at any time; … and (iv) your relationship with Uber[.]

*Id.* ¶ 37; Ex. F at pp. 56−57.

The 2021 Uber Terms also expressly state that the Federal Arbitration Act governs the Arbitration Agreement. *Id.* ¶¶ 20, 23, 37; Ex. F at pp. 39, 61.3

### E.    Procedural History

Plaintiffs Davitashvili and Bensimon commenced this action on April 13, 2020. The Amended Complaint including the current group of named plaintiffs (ECF No. 24, "Am. Compl.") was filed on August 19, 2020.[4] In June 2022, plaintiffs provided information in response to initial discovery requests that enabled Uber to identify accounts associated with the plaintiffs and determine which agreements governed their respective relationships with Uber.[5] The scheduling order previously entered by the Court provided that any motion to compel arbitration with respect to one or more named plaintiffs was to be filed by August 26, 2022. *See* ECF No. 65.

## III.   ARGUMENT

The Federal Arbitration Act ("FAA") reflects a liberal federal policy favoring arbitration, and requires strict enforcement of arbitration provisions. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). The FAA provides that

---

[3] Subsequent versions of the Terms contain arbitration provisions, class action waivers, and delegation clauses that are substantially identical to the December 2021 Uber Terms. *See* Sullivan Decl. Ex. F at pp. 77−87, 102−114.

[4] On August 26, 2022, the parties filed a Stipulation of Voluntary Dismissal as to named Plaintiff Mia Sapienza pursuant to Rule 41(a)(1)(ii). ECF No. 71. This memorandum and the accompanying declaration accordingly do not address the similar arbitration obligations that apply to Ms. Sapienza. Uber and Postmates reserve their right to amend these submissions in the event that Ms. Sapienza for some reason is not dismissed from the action.

[5] *See, e.g.,* Declaration of Eric S. Hochstadt ("Hochstadt Decl."), Ex. A (Plaintiffs' Verified Interrogatory Responses, dated June 27, 2022). The discovery responses recently provided by plaintiffs also enabled defendants to determine that the plaintiff described in the pleadings as "Malik Drewey" may have been misidentified by plaintiffs; Uber understands that the correct spelling of this plaintiff's surname may be *Drewery* (with an r as the penultimate letter).

contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]"  9 U.S.C. § 2.  "[C]ourts must place arbitration agreements on equal footing with other contracts, and enforce them according to their terms."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 1745 (2011) (internal citations omitted).

A.     **The Arbitration Plaintiffs Agreed to Be Bound by Uber's Terms, Which Include Valid Arbitration Agreements**.

The first step in the evaluation of a motion to compel arbitration is determining whether a valid arbitration agreement exists, and this question is resolved under state contract law.  *See, e.g.,* *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ___, 139 S. Ct. 524, 530 (2019); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017).[6]  In this case, the Arbitration Plaintiffs assented to the 2021 Uber Terms when they used Uber or Postmates and/or affirmatively clicked in-app checkboxes indicating assent to updated Terms.  The 2021 Uber Terms clearly stated that any claims "arising out of or relating to" Uber's Terms or plaintiffs' "access to or use of the Services at any time" would be settled by binding, individual arbitration.  Sullivan Decl. ¶¶ 20, 23, 37; Ex. F at pp. 37–38, 56.  Each of the Arbitration Plaintiffs thus agreed to be bound by the 2021 Uber Terms and became subject to arbitration agreements.  The validity of the arbitration agreements is clear under the similar contract formation standards of California law (which applies to Bensimon) and New York law (which applies to the other Arbitration Plaintiffs).

---

[6] The court of appeals in *Meyer* was construing and applying California law, but it found that New York and California apply "substantially similar rules for determining whether the parties have mutually assented to a contract term."  868 F.3d at 74 (citation and internal quotation marks omitted).

1.     **Bensimon Entered Into a Valid Arbitration Agreement Under California Law.**

Bensimon used his Uber account through November 2021, and California law applies to questions concerning whether he entered into a valid contract with Uber.  The July 2021 Terms, which were in effect when Bensimon last used his account, specified that these Terms would be "governed by and construed in accordance with the laws of the State of California."  *Id.* ¶ 34.  Under California law, assent "may be manifested by written or spoken words, or by conduct[,]" *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999), and acceptance of contract terms may be implied through action or inaction, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95, 111 S. Ct. 1522, 1527-1528 (1991).  For electronic contracts, assent requires only "reasonable notice" of the terms of the agreement.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173–79 (9th Cir. 2014).  An agreement to arbitrate may exist where the notice of the arbitration provision was "reasonably conspicuous."  *Meyer*, 868 F.3d at 77 (applying California law).  Even lengthy terms that must be reached by a hyperlink may provide reasonably conspicuous notice.  *See id.* at 79.  Assent may be unambiguous even if it is not express.  *See id.* at 79–80 (holding that Uber user unambiguously assented to arbitration in light of his objectively reasonable notice of the terms even though he did not provide express assent).  As noted above, Bensimon repeatedly used his Uber account through as recently as November 18, 2021.  Sullivan Decl. ¶41; Ex. H at p. 3.  For the reasons explained above, his use of the account at that time established an agreement to be bound by the Terms in effect at that time, which included an arbitration agreement.

2.     **Boisi, Davitashvili, Eliades, Obey, and Swaby Entered Into Valid Arbitration Agreements Under New York Law**.

Questions concerning whether the remaining Arbitration Plaintiffs (Boisi, Davitashvili, Eliades, Obey, and Swaby) entered into valid arbitration agreements are governed by New York law.  This is because these plaintiffs reside in New York (Am. Compl. ¶¶ 10, 13−16) and were

subject to the December 2021 Uber Terms, which included a general choice of law provision referencing "the laws of the state in which your dispute arises."  *See* Sullivan Decl. ¶ 38.

Under New York law, the touchstone of a binding contract is mutual manifestation of assent.  *See Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497 (LLS), 2014 WL 1652225, at *2 (S.D.N.Y. Apr. 24, 2014).  This principle applies to digital contracts, such as agreements made over the internet.  "[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance."  *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010).  Click wrap agreements, where the user has "signed" the contract by clicking "I agree" have been routinely upheld by courts.  *See* Order at 12−13, *Williamson v. Alexander*, No. 508671/2021 (N.Y. Sup. Ct. Aug. 4, 2022), NYSCEF. No.78 ("[T]he court finds that the design, layout and language used in the pop-up screen notifying plaintiff of Uber's updated terms as well as plaintiff's manifestation of assent by clicking the checkbox and 'Confirm' button placed plaintiff on inquiry notice of Uber's terms and, as such, plaintiff is therefore bound by them."); *Aminoff & Co LLC v. Parcel Pro, Inc.*, No. 21-CV-10377 (AT)(KHP), 2022 WL 987665, at *4 (S.D.N.Y. Apr. 1, 2022) ("Plaintiff undoubtedly agreed to be bound by the arbitration provision … and assent[ed] … by clicking the check box."); *Sollinger v. SmileDirectClub, LLC*, No. 19-CV-5977 (JPO), 2020 WL 774135, at *2 (S.D.N.Y. Feb. 18, 2020) (holding that clickwrap agreement provided requisite inquiry notice); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012).

These standards have been satisfied here.  Boisi, Davitashvili, Eliades, Obey, and Swaby expressly assented to the December 2021 Uber Terms.  In particular, they were notified of the updated terms through an in-app blocking pop-up screen that had a header which said, "We've

updated our terms" and included language encouraging users to read the updated terms in full along with a hyperlink to those terms.  Sullivan Decl. ¶ 39; Ex. G.  To proceed past the pop-up screen, Boisi, Davitashvili, Eliades, Obey, and Swaby affirmatively checked a box affirming that they had reviewed and agreed to the Terms of Use.  *Id.* ¶ 40.

All of Uber's Terms, including the 2021 Uber Terms, provided clear notice of the relevant Arbitration Agreements.  The 2021 Uber Terms conspicuously and unambiguously highlighted the existence of the Arbitration Agreement in a separate paragraph that begins with the word "IMPORTANT" and included only capitalized text.  *Id.* ¶¶ 19, 20, 36; Ex. F at pp. 37, 55−56.  Further, the Arbitration Agreement itself was placed prominently in the second section of the 2021 Uber Terms.  *See id.* Ex. F at pp. 37, 56.

In addition, the operative Terms in effect at the time the Arbitration Plaintiffs created their Uber and/or Postmates accounts made clear that continued use of the applications constituted consent to be bound by the Terms, which included an arbitration agreement.  *Id.* ¶¶ 11−12, 27−28; *see* Exs. B, E.  The Arbitration Plaintiffs did not stop using Uber and/or Postmates after establishing their user accounts.  They continued using and accessing Uber and Postmates after receiving notice of the 2021 Uber Terms, including during the pendency of this action.  *Id.* ¶ 41; *see* Ex. H.[7]

Because all of these users assented to "reasonably conspicuous" Arbitration Agreements, those agreements are valid and should be enforced in accordance with their terms.

---

[7] In addition, in response to defendants' interrogatories, five of the Arbitration Plaintiffs recently confirmed that they each have placed orders using Uber's Services.  *See* Hochstadt Decl, Ex. A (Plaintiffs' Verified Interrogatory Responses, dated June 27, 2022).

**B.      Under Uber's Delegation Clause, the Arbitrator Must Decide All "Gateway"
         Arbitrability Issues**.

The Supreme Court recently confirmed that "[c]ourts must respect" a decision by parties

to delegate to an arbitrator the resolution of any potential threshold disputes about arbitration, such

as whether an agreement to arbitrate is enforceable and whether it applies to particular categories

of disputes.  *See Henry Schein*, 586 U.S. at ___, 139 S. Ct. at 530–31.  The Court in *Schein*

explained that "[j]ust as a court may not decide a merits question that the parties have delegated to

an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an

arbitrator."  *Id.*  If there is "clear and unmistakable evidence from the arbitration agreement, as

construed by the relevant state law" that the parties intended to delegate arbitrability issues to the

arbitrator, the Court must enforce that delegation.  *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193,

1198–99 (2d Cir. 1996).  If the contract includes a delegation clause, "a court may not override the

contract, even if the court thinks that the arbitrability claim is wholly groundless."  *Henry Schein*,

586 U.S. at ___, 139 S. Ct. at 526.

Prior to bringing this action, the Arbitration Plaintiffs were on notice that claims against

Uber and Postmates, including issues regarding the arbitrability of such claims, could not be

brought in court.  The March 2020 Uber Terms of Use and the December 2019 Postmates Terms

of Service that were operative immediately before the commencement of this action, like the 2021

Uber Terms, contained arbitration provisions with delegation clauses.  The delegation clauses in

the 2021 Uber Terms clearly and unmistakably require that any threshold questions concerning

arbitrability must be decided by the arbitrator.  These clauses state that the arbitrator, and "not any

federal … court … shall have exclusive authority to resolve any dispute[s]" that "relat[e] to the

interpretation, applicability, enforceability or formation of this Arbitration Agreement," including

"any claim that all or [any] part of this Arbitration Agreement is void or voidable."  Sullivan Decl.

13

¶¶ 20, 23, 37.  The next sentence in these clauses makes delegation even more explicit, explaining that the arbitrator shall have exclusive authority to resolve "all threshold arbitrability issues" including issues relating to whether the Terms "are applicable, unconscionable, or illusory and any defense to arbitration."  *Id*.  The Arbitration Provisions also incorporate by reference consumer arbitration rules that permit the arbitrator to rule on his or her own jurisdiction.  *See id.*

The Second Circuit and the New York Court of Appeals have found similar delegation clauses to be valid and enforceable.  *See, e.g., Bybyk*, 81 F.3d at 1199 (finding that "the parties[] inten[ded] to arbitrate all issues, including arbitrability" when language stated, among other things, that arbitration should be used for "any and all" controversies and that parties waived their right to seek remedies in court); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (explicit incorporation of arbitration rules that empower an arbitrator to decide issues of arbitrability was "clear and unmistakable evidence" of delegation); *Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 26 N.Y.3d 659, 676 (2016) (delegation clause stating that the arbitrators "have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability" was "valid because the parties 'clearly and unmistakably' agreed to arbitrate arbitrability") (internal citations omitted).  Courts have routinely enforced delegation clauses in Uber's contracts.  *See, e.g., Leusch v. Uber Techs., Inc.*, No. 3:19-CV-00772-L-JLB, 2019 WL 5594923, at *2 (S.D. Cal. Oct. 29, 2019) (finding that delegation clause within Arbitration Agreement included in Uber's Terms for users was "clear and unmistakable"); *O'Callaghan v. Uber Corp. of Cal.*, No. 17 Civ. 2094 (ER), 2018 WL 3302179, at *8-*9 (S.D.N.Y. July 5, 2018) (enforcing delegation clause in Uber driver agreement); *Camilo v. Uber Techs., Inc.*, No. 17 Civ. 9508 (AKH), 2018 WL 2464507, at *3 (S.D.N.Y. May 31, 2018) (same).  This Court should reach the same result.

**C.    If the Court finds that it has Jurisdiction to Consider Arbitrability Issues, it Should Find that the Arbitration Plaintiffs' Claims Against Uber and Postmates Must Be Arbitrated on an Individual Basis.**

If for some reason the Court does not enforce the delegation clauses and finds that it has jurisdiction to evaluate threshold arbitrability issues, it should find that the arbitration provisions in the 2021 Uber Terms are valid and enforceable, and that the Arbitration Plaintiffs' claims fall within the scope of those provisions.  If delegation clauses are not enforced, the Court would determine "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).  Valid arbitration agreements clearly exist here for the reasons explained above in Argument Section I-A.  Those agreements should be found to apply to the disputes raised here for the reasons explained below.

**1.    The Arbitration Plaintiffs' Claims Fall Within the Scope of Arbitration Agreements.**

Once it is clear, as it is here, that the parties have an agreement to arbitrate on an individual basis, the FAA requires a court considering the scope of such an agreement to compel arbitration "unless it may be said with ***positive assurance*** that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986) (emphasis added) (citation omitted).  "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration."  *Moses H. Cone*, 460 U.S. at 24–25, 103 S. Ct. at 941.

Courts have found that antitrust claims relating to contractual agreements are covered by broad arbitration provisions.  "The Second Circuit has held that if the allegations underlying the claims touch matters covered by the parties' contracts, those claims must be arbitrated whatever the legal labels attached to them."  *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 103

(S.D.N.Y. 2015) (quotations omitted) (citation omitted); *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 228–29, 133 S. Ct. 2304, 2306–07 (2013) (antitrust claims were subject to an arbitration agreement that included a class action waiver).

The 2021 Uber Terms that apply to Uber and Postmates users expressly state that the Arbitration Plaintiffs must "resolve any claim … against Uber on an individual basis in arbitration."  Sullivan Decl. ¶¶ 20, 23, 37; Ex. F pp. 37, 56.  Those Terms explain, with certain limited exceptions not relevant here, that "*any* dispute, claim or controversy *in any way* arising out of or relating to (i) these Terms and prior versions of these Terms … (ii) your access to or use of the Services at any time; … [and] (iv) your relationship with Uber" will be "settled by binding individual arbitration … and not … a court of law."  *Id.* ¶¶ 20, 23, 37; Ex. F pp. 37−38, 56−57 (emphasis added).  This litigation relates to Uber's Terms because, according to plaintiffs' allegations, Uber's desire to encourage consumers' use of its delivery services led to the adoption of allegedly anticompetitive contractual provisions that purportedly caused users to pay higher prices.  *See* Am. Compl. ¶¶ 116, 132–33.  The Arbitration Plaintiffs also contend that the prices of items purchased through the Uber and Postmates platforms are higher as a result of their restaurant commission rates.  *Id.* ¶ 147.  As users of Uber's services, the Arbitration Plaintiffs are subject to these allegedly higher prices.  The claims asserted in this action thus clearly relate to the Arbitration Plaintiffs' use of the Services, and to their relationships with Uber.

## 2.  The Arbitration Plaintiffs Must Pursue Their Claims on an Individual, Non-Class Basis.

The arbitration provisions in Uber's Terms, including the 2021 Uber Terms, do not permit class actions or class arbitrations.  *See* Sullivan Decl. ¶¶ 20, 23, 37; *see* Ex. F.  The Supreme Court has upheld class action waivers in arbitration agreements as valid and enforceable.  *See Epic Sys. Corp. v. Lewis*, 584 U.S. ___, 138 S. Ct. 1612, 1619 (2018)

("Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings."); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58–59, 136 S. Ct. 463, 471 (2015) (the FAA preempted attempt to invalidate arbitration agreement with class action waiver under California law). Courts have routinely enforced class action waivers in arbitration agreements. *See, e.g.*, *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295–96 (2d Cir. 2013) (class action waivers must be enforced absent a "contrary congressional command"); *Micheli & Shel, LLC v. Grubhub Inc.*, No. 21-CV-4995 (JMF), 2022 WL 622828, at *6 (S.D.N.Y. Mar. 1, 2022) (upholding class action waiver in putative class action alleging claims relating to charges on Uber Eats and other platforms). The Arbitration Plaintiffs thus should be precluded from pursuing their claims in any manner other than on an individual basis.

### D.     This Action Should Be Stayed in its Entirety Pending Arbitration.

Section 3 of the FAA provides that where claims are referred to arbitration, the Court "shall" stay the litigation of those claims "until such arbitration has been had in accordance with the terms of the agreement." *See* 9 U.S.C. § 3. The Court also has, and should exercise here, its discretion to stay the entire action, including the claims of the sole named plaintiff who appears not to have contracted with Uber or Postmates. "A stay is usually appropriate where arbitrable and non-arbitrable claims arise out of the same set of facts and arbitration may decide the same facts at issue in the litigation." *Kwik Ticket Inc. v. Spiewak*, No. 20-cv-01201 (FB), 2022 WL 3446316, at *4 (E.D.N.Y. Aug. 17, 2022) (citation and internal quotation marks omitted). The Court should stay plaintiff Malik Drewey's claims to conserve judicial resources, avoid potential inconsistent outcomes, and allow the arbitration to inform the Court's subsequent disposition of any non-arbitrable claims. *See id.* ("Stays are particularly appropriate where they promote judicial

economy, [and] avoidance of confusion and possible inconsistent results.") (citation and internal quotation marks omitted).

IV.     **CONCLUSION**

For the foregoing reasons, the Court should grant this motion, compel arbitration with respect to all claims asserted by the Arbitration Plaintiffs against Uber and Postmates, and stay this action in its entirety pending the conclusion of the arbitration proceedings.


Dated: August 26, 2022                         _s/ Andrew A. Ruffino_
                                               Andrew A. Ruffino
                                               COVINGTON & BURLING LLP
                                               The New York Times Building
                                               620 Eighth Avenue
                                               New York, New York 10018
                                               Tel: (212) 841-1097
                                               aruffino@cov.com

                                               Derek Ludwin
                                               Katharine Mitchell-Tombras
                                               Jae Ermilus
                                               Lori Taubman
                                               COVINGTON & BURLING LLP
                                               One CityCenter
                                               850 Tenth Street NW
                                               Washington, D.C. 20001
                                               Tel: (202) 662-5429
                                               dludwin@cov.com
                                               KMitchellTombras@cov.com

                                               *Counsel for Defendant Uber*
                                               *Technologies, Inc. and Postmates, LLC*