UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIAM DAVITASHVILI, ADAM BENSIMON, MIA SAPIENZA, PHILIP ELIADES, JONATHAN SWABY, JOHN BOISI, NATHAN OBEY, and MALIK DREWEY, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

GRUBHUB INC., UBER TECHNOLOGIES, INC., and POSTMATES INC.,

    Defendants.

Case No. 1:20-cv-03000 (LAK)

**REPLY MEMORANDUM OF LAW OF DEFENDANTS
UBER TECHNOLOGIES, INC. AND POSTMATES, LLC
IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION**

COVINGTON & BURLING LLP

The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1097

One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
Tel: (202) 662-5429

*Counsel for Defendants
Uber Technologies, Inc. and Postmates, LLC*

Table of Contents

I.   PRELIMINARY STATEMENT ....................................................................................... 1

II.  THE ARBITRATION PLAINTIFFS ASSENTED TO AN ENFORCEABLE
     ARBITRATION AGREEMENT THAT INCLUDES A DELEGATION
     CLAUSE. .......................................................................................................................... 2

     A.   The Arbitration Plaintiffs Repeatedly Agreed to Arbitrate Their Disputes. ............ 2

     B.   The Court Should Enforce the Arbitration Agreement's Unambiguous
          Delegation Clause. ................................................................................................... 4

III. PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION
     AGREEMENT. ................................................................................................................. 6

IV.  THE CLASS ACTION WAIVER IS ENFORCEABLE. ................................................. 9

V.   THE COURT SHOULD STAY THIS ACTION PENDING THE RESOLUTION
     OF THE ARBITRATION PROCEEDINGS. .................................................................. 10

VI.  CONCLUSION. .............................................................................................................. 10

Table of Authorities

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228, 133 S. Ct. 2304 (2013)..................................................................................9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643, 106 S. Ct. 1415 (1986)..................................................................................7

*Calderon v. Sixt Rent a Car, LLC*,
  5 F.4th 1204 (11th Cir. 2021) .............................................................................................8

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995).....................................................................................................7

*Gingras v. Think Fin., Inc.*,
  922 F.3d 112 (2d Cir. 2019).................................................................................................6

*Haas v. Slate Lending of Wis.*,
  No. 21-cv-648-jdp, 2022 WL 2209604 (W.D. Wis. June 21, 2022) ................................4, 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. _, 139 S. Ct. 524 (2019).......................................................................................2

*Hines v. Overstock.com, Inc.*,
  668 F. Supp. 2d 362 (E.D.N.Y. 2009) .................................................................................3

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004).............................................................................................7, 8

*Kwik Ticket Inc. v. Spiewak*,
  No. 20-cv-01201 (FB), 2022 WL 3446316 (E.D.N.Y. Aug. 17, 2022).................................10

*Meyer v. Uber Techs.*,
  868 F.3d 66 (2d Cir. 2017)...................................................................................................3

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614, 105 S. Ct. 3346 (1985)..................................................................................7

*New Prime v. Oliveira*,
  586 U.S. _, 139 S. Ct. 532 (2019).......................................................................................6

*PaineWebber Inc. v. Bybyk*,
  81 F.3d 1193 (2d Cir. 1996).................................................................................................5

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
  369 F.3d 645 (2d Cir. 2004).................................................................................................8

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63, 130 S. Ct. 2772 (2010)...................................................................................4, 5

*Revitch v. DIRECTV, LLC*,
    977 F.3d 713 (9th Cir. 2020) ...........................................................................................6, 8

*Saizhang Guan v. Uber Techs., Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ..................................................................................9

*Starke v. Gilt Groupe, Inc.*,
    No. 13 Civ. 5497 (LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ...............................3

*Thomas v. Cricket Wireless, LLC*,
    506 F. Supp. 3d 891 (N.D. Cal. 2020) ..................................................................................6

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003)..................................................................................................8

I.      **PRELIMINARY STATEMENT**

The key question on this Motion is whether the Arbitration Plaintiffs[1] entered into valid arbitration agreements with Uber and its subsidiary Postmates. The answer is yes. Plaintiffs ignore substantial evidence demonstrating that each Arbitration Plaintiff assented—both before and after the commencement of this litigation—to terms requiring them to arbitrate their disputes. Further, Uber's arbitration provision (the "Arbitration Agreement"), which governs disputes with respect to both Uber and Postmates, includes a delegation clause that assigns to the arbitrator exclusive authority to decide all threshold arbitrability issues, including as to scope and enforceability. All of Plaintiffs' arguments beyond questions of contract formation ignore that delegation clause and need not be addressed by this Court. The Court should give effect to the clear contractual requirements and dismiss Arbitration Plaintiffs' claims against Uber and Postmates so the arbitrator may address any threshold arbitrability issues.

If the Court nevertheless considers Plaintiffs' remaining arguments, it should find that the Arbitration Agreement requires arbitration on an individual, non-class basis to resolve the claims asserted here. Plaintiffs' rhetorical invective against "infinite" arbitration clauses has no relevance to this case. The Arbitration Plaintiffs contracted with Uber (and, in some cases, Postmates) to benefit from the services offered through those platforms.[2] Here, Plaintiffs are challenging an element of the platforms that enabled platform participants to receive meal delivery services from Uber (and, in some cases, Postmates) without paying menu prices exceeding those charged through other channels. Plaintiffs' allegation that these provisions in the platform structure resulted in

---

[1] The Arbitration Plaintiffs are named plaintiffs Adam Bensimon, John Boisi, Mariam Davitashvili, Philip Eliades, Nathan Obey, and Jonathan Swaby.

[2] As explained in Section II below, Uber's platform terms cover both the Uber Rides and Uber Eats services, and are applicable to Uber subsidiaries, including Postmates.

higher prices has an obvious and direct connection to the terms governing the platform marketplace, and this connection is not broken simply because Plaintiffs fashion their claims to exclude purchases made through Uber and Postmates.

## II.  THE ARBITRATION PLAINTIFFS ASSENTED TO AN ENFORCEABLE ARBITRATION AGREEMENT THAT INCLUDES A DELEGATION CLAUSE.

As previously explained,[3] the Court's role on this Motion is to apply state law to determine whether the parties entered into a valid arbitration agreement.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. _, 139 S. Ct. 524, 530 (2019).  If a valid arbitration agreement exists that delegates to the arbitrator disputes over arbitrability, the court must enforce that delegation.  This is true "even if the court thinks that the arbitrability claim is wholly groundless." *Id.*, 586 U.S. at _, 139 S. Ct. at 526.  Because the Arbitration Plaintiffs entered into valid arbitration agreements that include delegation clauses and they have failed to make a challenge specific to the delegation clause, this Court should grant this Motion.

### A.  The Arbitration Plaintiffs Repeatedly Agreed to Arbitrate Their Disputes.

All of the Arbitration Plaintiffs agreed to Uber's Arbitration Agreement.  Uber and Postmates have provided abundant and unrebutted evidence of each of the Arbitration Plaintiffs' initial and subsequent agreements to terms containing an arbitration provision.  *See* Sullivan Decl. ¶¶ 8–42.  Indeed, Plaintiffs concede that Boisi, Davitashvili, Eliades, Obey, and Swaby expressly assented to the December 2021 Uber Terms through clickwrap agreements.[4]  Plaintiffs are left with two unpersuasive challenges regarding contractual assent.

---

[3] *See* Moving Brief (ECF No. 77) at 9, 13–14.

[4] *See* Moving Brief at 5–6; Opp. (ECF No. 87) at 20 (citing cases where courts found contract formation through clickwrap agreements).

First, Plaintiffs maintain that Boisi, Davitashvili, Obey, and Swaby did not agree to arbitrate with Postmates. But this ignores the evidence showing that they assented to the Postmates terms. It is well settled that express assent is not required to form a valid contract. *See, e.g.*, *Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497 (LLS), 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (under New York law, assent may be implied from actions, such as clicking a "Shop Now" button after being advised that shopping would be subject to merchant's Terms of Membership); *Meyer v. Uber Techs.*, 868 F.3d 66, 79–80 (2d Cir. 2017) (under California law, assent may be unambiguous even if not express). Plaintiffs do not dispute that accepting the Postmates terms, which included arbitration agreements, was a necessary precondition to creating a Postmates account. *See* Sullivan Decl. ¶ 9; *id.* Ex. A (records of Postmates account creation dates); *id.* Ex. B (Postmates sign-up terms explaining that use of the Postmates Platform constitutes agreement to be bound to terms and subsequent updates, and containing an arbitration agreement).[5] And in 2021, after being acquired by Uber, Postmates informed users by email, with a blue hyperlink to the Uber terms, that their accounts were being linked to Uber and would be subject to an updated arbitration agreement. *See* Sullivan Decl. ¶¶ 17–23; *id.* Ex. C at 3. Thereafter, Boisi, Davitashvili, Obey, and Swaby accepted the December 2021 Uber Terms, which expressly define Uber to include "its subsidiaries," by clicking a consent checkbox. *See id*. Ex. D. at 3, 4, 6, 7. Plaintiffs concede that assent can be established through clickwrap agreements, and this supports a finding of assent by Boisi, Davitashvili, Swaby, and Obey to arbitrate with Postmates even under the heightened standard for contract formation suggested by Plaintiffs here.

---

[5] Uber's and Postmates' submission of unrebutted evidence distinguishes this case from *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362 (E.D.N.Y. 2009). The motion to compel arbitration in that case was denied because the defendant—unlike Uber and Postmates here—failed to submit evidence refuting the plaintiff's sworn statement regarding notice of the terms at issue. *See id.* at 367.

3

Second, Plaintiffs' attempt to distinguish Bensimon's assent through conduct is without merit. Bensimon would not have been able to access the Uber platform without accepting the Uber terms, and he continued to use the Uber platform through November 2021. *See id.* Ex. H at 3. In addition, the documents submitted by Uber reflect that Uber accounts (including Bensimon's account) and the corresponding terms cover all "Services" available through the "Uber Marketplace Platform," including ride services from drivers as well as meals from restaurants. *See id*. ¶ 36; *id.* Ex. F. at 38, 41 (provisions in July 2021 Uber Terms).

### B. The Court Should Enforce the Arbitration Agreement's Unambiguous Delegation Clause.

The Arbitration Agreement includes an express delegation clause requiring that an arbitrator, not this Court, resolve threshold arbitrability issues. Plaintiffs raise no specific issue with Uber's enforcement of the delegation clause. Plaintiffs only argue that Postmates' enforcement of the Arbitration Agreement as a whole is unconscionable, and then assert in a cursory footnote, without any explanation, that they "challenge the validity of the Delegation Clause" on those same grounds. *See* Opp. at 34 n.9. That is not a "challenge[] [to] the delegation provision specifically," and thus this Court should treat Uber's delegation clause "as valid under § 2, and must enforce it under § 3" of the Federal Arbitration Act ("FAA"). *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72, 130 S. Ct. 2772, 2779 (2010). "[I]f the delegation provision is valid, or if a party is challenging the arbitration agreement generally rather than the delegation provision specifically, then any issues included in the delegation provision must be decided by the arbitrator, including issues about the scope and validity of the arbitration agreement." *Haas v. Slate Lending of Wis.*, No. 21-cv-648-jdp, 2022 WL 2209604, at *3 (W.D. Wis. June 21, 2022).

When parties agree to arbitrate gateway questions, such as arbitrability or scope, such an agreement "is simply an additional, antecedent agreement" that is valid unless there are grounds

to revoke the contract. *Rent-A-Ctr.,* 561 U.S. at 68–70, 130 S. Ct. at 2777–78 (2010). When there is "clear and unmistakable evidence" that the parties intended to delegate arbitrability issues to the arbitrator, the Court must enforce that delegation. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198–99 (2d Cir. 1996); *Haas*, 2022 WL 2209604, at *2−3 (declining to address plaintiff's argument that the arbitration agreement was "infinite" and "perpetual" because the agreement contained a delegation clause providing that disputes over the "validity and scope" of the clause were subject to arbitration).

Postmates may enforce the Arbitration Agreement, including its delegation clause, with respect to any disputes with Postmates users Boisi, Davitashvili, Obey, and Swaby. The delegation clause in the December 2021 Uber Terms confers on the arbitrator "exclusive authority to resolve all threshold arbitrability issues," including the precise issue of whether the terms are unconscionable. *See* Sullivan Decl. ¶ 37. In addition, Plaintiffs' challenge to the enforceability of Uber's Arbitration Agreement as to their Postmates claims fails to acknowledge that arbitration would still be required even if earlier versions of the Postmates terms were deemed operative. Prior to commencing this action, those Arbitration Plaintiffs with Postmates accounts were subject to the December 2019 Postmates Terms of Service that, like Uber's Arbitration Agreement, included an arbitration provision, class action waiver, and a delegation clause. *See id.* ¶¶ 15−16; *id.* Ex. B at 63, 86–91. The delegation clause in the December 2019 Postmates Terms provided that the arbitrator must decide issues "relating to [] scope, enforceability, and arbitrability." *Id*. Ex. B at 87–88. The Arbitration Plaintiffs nevertheless commenced this action. While this case was pending, Uber acquired Postmates and notified Postmates users by email that their accounts would be linked with Uber and that there were "updates to the Arbitration Agreement." *Id*. ¶ 21; *id.* Ex. C at 3. That email contained a blue hyperlink to the Uber terms. Thereafter, Boisi,

5

Davitashvili, Obey, and Swaby assented, by clicking a checkbox, to the December 2021 Uber Terms that governed both their Uber and Postmates accounts. *Id.* ¶ 40. Thus, under either Uber's or Postmates' terms, the result is the same: the parties clearly and unmistakably intended to delegate any arbitrability issues to the arbitrator, and this Court should enforce the delegation clause by granting this Motion. *See* Moving Brief at 13–14.

### III. PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

Plaintiffs attempt an end run around the Arbitration Agreement by arguing that the FAA does not apply here. Plaintiffs' core contention is that the Arbitration Agreement is unenforceable because it is "infinite" and unrelated to the subject matter of this case. However, as explained above, that determination must be made by the arbitrator pursuant to the terms of the delegation clause. The cases Plaintiffs cite are readily distinguishable. For example, *New Prime v. Oliveira*, 586 U.S. _, 139 S. Ct. 532 (2019) involved employment-related arbitration clauses that are specifically excluded from the application of Section 1 of the FAA. The plaintiff in *Gingras v. Think Finance, Inc.*, 922 F.3d 112, 126 (2d Cir. 2019), unlike Plaintiffs here, articulated a "specific attack on the delegation provision" in their complaint. Other opinions cited by Plaintiffs included no discussion of delegation clauses, which are critical to the analysis on the Motion by Uber and Postmates here. *See, e.g., Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020); *Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891 (N.D. Cal. 2020).

If the Court does not enforce the delegation clause and addresses threshold issues, it should reject Plaintiffs' argument that their claims are "wholly unrelated" to their use of Defendants' platforms, and should instead find that the Arbitration Agreement covers the claims in this lawsuit. Under the FAA, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986). Furthermore, the Second Circuit's test for determining whether a claim falls within the scope of an arbitration agreement focuses on whether the totality of the complaint's allegations "touch matters" covered by the agreement. *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20–21 (2d Cir. 1995) (analysis of whether claims fall within the scope is "not controlled by the[ir] characterization … in the pleading" or their "legal labels"); *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.13, 105 S. Ct. 3346, 3352 n.13 (1985) ("insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability").

In this case, the Uber terms govern the Arbitration Plaintiffs' use of the Uber and Postmates platforms, and their claims relate directly to that use. Plaintiffs acknowledge that Uber and Postmates are "two-sided platforms" that, among other things, act as intermediaries to connect restaurants and consumers "to the benefit of both." Am. Compl. (ECF No. 28) ¶ 36. The pricing provisions challenged by Plaintiffs relate to one aspect of those platforms—the platforms' relationships with restaurants that provide meals to consumers through different channels—but that does not render the Arbitration Plaintiffs' use of the platforms unrelated to their claims. Further, Plaintiffs allege that Uber's NPCC provisions, which allegedly prevent restaurants from offering different pricing for meals sold through non-platform channels, have "produced substantial anticompetitive effects in the Restaurant Platform Market." *Id.* ¶ 201. Plaintiffs' allegations thus plainly "touch matters" covered by the parties' agreements.

Plaintiffs also argue that because the Arbitration Agreement is broad, it cannot be enforced under the FAA. However, the Arbitration Agreement is consistent with clauses that courts in this

Circuit have characterized as "broad" for purposes of the FAA and have enforced. *See, e.g., Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 649, 654 (2d Cir. 2004) ("any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement"); *Vera v. Saks & Co.*, 335 F.3d 109, 117 (2d Cir. 2003) (same). Courts are especially deferential to "broad" arbitration agreements, and have found such clauses "presumptively applicable to disputes involving matters going beyond the interpret[ation] or enforce[ment of] particular provisions of the contract that contains the arbitration clause." *JLM Indus.*, 387 F.3d at 172.

Further, the authority cited by Plaintiffs from other circuits is inapposite. For example, *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), involved an attempt to apply an arbitration clause in an agreement covering mobile phone service to claims based on unsolicited advertisements for satellite television service. Unlike in *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204 (11th Cir. 2021), Uber is not attempting to invoke an arbitration agreement entered into by the Arbitration Plaintiffs with an entirely different company. *Id.* at 1209 (Orbitz arbitration agreement did not cover services offered by third-party vendor). The subject matter of this litigation touches matters covered by the Uber terms, unlike the tenuous relationship of the claims in those cases to the agreements that contained the arbitration clauses.[6]

Lastly, Plaintiffs cannot characterize the Arbitration Agreement as "infinite" because it does not purport to cover all disputes that may arise between Uber (including its subsidiary Postmates) and users. In particular, the Arbitration Agreement expressly excludes certain classes

---

[6] In addition, neither the Ninth Circuit in *Revitch* nor the Eleventh Circuit in *Calderon* considered arbitration agreements that contained delegation clauses.

8

of disputes under Section 2(b). *See* Sullivan Decl. Ex. F at 60 (excluding claims brought in small claims court, sexual assault or harassment claims, and certain IP claims).

## IV. THE CLASS ACTION WAIVER IS ENFORCEABLE.

Plaintiffs selectively quote from one subsection of the Arbitration Agreement, the Class Action Waiver under Section 2(a)(2), in an attempt to argue that all of their claims must proceed in court. *See* Opp. at 32–33. In particular, Plaintiffs argue that Section 2(a)(1) of the Arbitration Agreement, which sets forth which disputes are covered, is somehow impermissibly expanded by language in the Class Action Waiver and, as a result, the Class Action Waiver is unenforceable and all claims should proceed in court. *See id*. This reading is at odds with the terms of the Arbitration Agreement itself. *See* Sullivan Decl. Ex. F at 56–57.

First, the Class Action Waiver addresses the manner in which claims are heard and not which disputes are covered by arbitration. The latter question is addressed in the "Covered Disputes" section of the Arbitration Agreement, and there is nothing in the plain language of the Arbitration Agreement suggesting that language in the Class Action Waiver somehow supplants the terms of Section 2(a)(1). Second, even if a portion of the Class Action Waiver were deemed unenforceable, only the claims subject to the unenforceable portion would proceed in court. *See id.* at 57 ("severance of the unenforceable or unlawful portion(s) shall have no impact whatsoever on the enforceability, applicability, or validity of the Arbitration Agreement or the arbitrability of any remaining claims asserted by you or Uber"). If the Court were to find that the Arbitration Agreement did not cover Plaintiffs' claims, it should still find that Plaintiffs cannot proceed with this action on a class basis. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234, 133 S. Ct. 2304, 2309 (2013) ("[c]ongressional approval of Rule 23 [does not] establish an entitlement to class proceedings"); *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 733 (E.D.N.Y. 2017).

**V.  THE COURT SHOULD STAY THIS ACTION PENDING THE RESOLUTION OF THE ARBITRATION PROCEEDINGS.**

Given that a grant of this Motion and the similar motion submitted by Grubhub might substantially limit the scope of this action, the Court should exercise its discretion to stay this action pending the resolution of claims in arbitration. A stay would avoid duplication of effort with simultaneous litigation in two forums, and allow the arbitration to inform the litigation and subsequent disposition of any non-arbitrable claims. *See, e.g., Kwik Ticket Inc. v. Spiewak*, No. 20-cv-01201 (FB), 2022 WL 3446316, at *4 (E.D.N.Y. Aug. 17, 2022).

**VI.  CONCLUSION.**

For the foregoing reasons, the Court should grant Defendants' Motion to Compel Arbitration of all claims asserted by the Arbitration Plaintiffs against Uber and Postmates.

Dated: New York, New York
September 30, 2022

*s/ Andrew A. Ruffino*
Andrew A. Ruffino
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1097
aruffino@cov.com

Derek Ludwin
Katharine Mitchell-Tombras
Jae Ermilus
Lori Taubman
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, D.C. 20001
Tel: (202) 662-5429
dludwin@cov.com
KMitchellTombras@cov.com

*Counsel for Defendant Uber Technologies, Inc. and Postmates, LLC*

10