# MEMO ENDORSED

June 29, 2023

Hon. Lewis A. Kaplan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

**Granted.**
**SO ORDERED.**

**/s/ Lewis A. Kaplan**
**Lewis A. Kaplan, U.S.D.J.**

**Dated: June 30, 2023**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___6-30-2023___

Re: *Mariam Davitashvili*, *et al. v. Grubhub Inc., et al.*, 20 Civ. 03000 (LAK) (S.D.N.Y.)

Dear Judge Kaplan,

We write jointly on behalf of the Plaintiffs and Defendants. Under Your Honor's Rules of Practice and Section 13.1 of this Court's ECF Rules and Instructions, we respectfully submit this joint letter motion based on last Friday's Supreme Court decision in *Coinbase v. Bielski*, No. 22-105 (June 23, 2023), a copy of which is attached. In light of *Coinbase*, the parties request that the Court stay all proceedings until Defendants' pending interlocutory appeals under 9 U.S.C. § 16(a) are resolved. *See Davitashvili v. Grubhub Inc.*, Nos. 23-521(L), 23-522(Con) (2d Cir.).

According to the Supreme Court in *Coinbase*, a "district court must stay its pre-trial and trial proceedings while [an] interlocutory appeal" under "9 U. S. C. §16(a) … is ongoing." Slip op. at 1 (abrogating *Motorola Credit Corp. v. Uzan*, 388 F. 3d 39, 53-54 (2d Cir. 2004)). The Court explained that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal.'" *Id.* at 3 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). The Court in *Coinbase* also held that when a party appeals under 9 U.S.C. § 16(a), "the entire case is essentially 'involved in the appeal.'" *Id.* (quoting *Griggs*, 459 U.S. at 58).

Accordingly, *Coinbase* requires that this Court stay all proceedings with respect to the five named plaintiffs subject to both Defendants' 9 U.S.C. § 16(a) appeals. And since all plaintiffs in this case assert the same allegations in support of the same claims, and since there is no plaintiff not subject to either appeal who can seek to represent one of the three proposed classes, going forward without all plaintiffs for all of the putative classes poses many risks. They include duplicative and inefficient party, third-party, and expert discovery and multiple rounds of class certification proceedings, all "wast[ing] scarce judicial resources." *Coinbase*, slip op. at 6. Under these circumstances, "the interests of justice [and] judicial economy thus would be served" by a complete "stay [of] proceedings." *Freeman v. Complex Computing Co.*, 931 F. Supp. 1115, 1124 (S.D.N.Y. 1996) (Kaplan, J.), *aff'd in relevant part, rev'd in part on other grounds and remanded*, 119 F.3d 1044 (2d Cir. 1997).

For the foregoing reasons, the parties request that this Court stay all proceedings in this case until Defendants' pending interlocutory appeals under 9 U.S.C. §16(a) are resolved and the Second Circuit issues the mandates to this Court. (The parties have also agreed to work to expedite resolution of Defendants' appeals.) If the Court grants this motion, the parties will provide the Court with a proposed scheduling order within twenty-one days after the issuance of the mandates.

Sincerely,

s/ *Eric S. Hochstadt*
Eric S. Hochstadt
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
eric.hochstadt@weil.com

*Counsel for Grubhub Inc. (d/b/a Seamless)*

s/ *Andrew A. Ruffino*
Andrew A. Ruffino
Covington & Burling LLP
The New York Times Building
620 8th Avenue
New York, NY 10018
aruffino@cov.com

*Counsel for Uber Technologies, Inc. and Postmates Inc.*

s/ *Edward Normand*
Edward Normand
Freedman Normand Friedland LLP
99 Park Avenue, 19th Floor
New York, NY 10016
tnormand@fnf.law

Gregory A. Frank
FRANK LLP
305 Broadway, Suite 700
New York, New York 10007
info@frankllp.com

*Counsel for Plaintiffs*

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## COINBASE, INC.  *v.*  BIELSKI

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 22–105.   Argued March 21, 2023—Decided June 23, 2023

Abraham Bielski filed a putative class action on behalf of Coinbase users alleging that Coinbase, an online currency platform, failed to replace funds fraudulently taken from the users' accounts. Because Coinbase's User Agreement provides for dispute resolution through binding arbitration, Coinbase filed a motion to compel arbitration. The District Court denied the motion. Coinbase then filed an interlocutory appeal to the Ninth Circuit under the Federal Arbitration Act, 9 U. S. C. §16(a), which authorizes an interlocutory appeal from the denial of a motion to compel arbitration. Coinbase also moved the District Court to stay its proceedings pending resolution of the interlocutory appeal. The District Court denied Coinbase's stay motion, and the Ninth Circuit likewise declined to stay the District Court's proceedings pending appeal.

*Held*: A district court must stay its proceedings while an interlocutory appeal on the question of arbitrability is ongoing.  Pp. 2–10.

   (a) Section 16(a) does not say whether district court proceedings must be stayed pending resolution of an interlocutory appeal.  But Congress enacted the provision against a clear background principle prescribed by this Court's precedents:  An appeal, including an interlocutory appeal, "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs* v. *Provident Consumer Discount Co.,* 459 U. S. 56, 58.  The *Griggs* principle resolves this case.  Because the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially "involved in the appeal," *id.,* at 58, and *Griggs* dictates that the district court stay its proceedings while the interlocutory appeal on arbitrability is ongoing.  Most courts of appeals to address this question, as well as leading treatises, agree with that conclusion.

2                    COINBASE, INC. *v.* BIELSKI

                            Syllabus

The common practice of staying district court proceedings during the
pendency of an interlocutory appeal taken under §16(a) reflects com-
mon sense. If the district court could move forward with pre-trial and
trial proceedings while the appeal on arbitrability was ongoing, then
many of the asserted benefits of arbitration (efficiency, less expense,
less intrusive discovery, and the like) would be irretrievably lost—even
if the court of appeals later concluded that the case actually had be-
longed in arbitration all along. Absent a stay, parties also could be
forced to settle to avoid the district court proceedings (including dis-
covery and trial) that they contracted to avoid through arbitration.
The *Griggs* rule avoids these detrimental results.

Congress's longstanding practice reflects the *Griggs* rule. Given
*Griggs*, when Congress wants to authorize an interlocutory appeal and
to automatically stay the district court proceedings during that appeal,
Congress ordinarily need not say anything about a stay. By contrast,
when Congress wants to authorize an interlocutory appeal, but *not* to
automatically stay district court proceedings pending that appeal,
Congress typically says so. Since the creation of the modern courts of
appeals system in 1891, Congress has enacted multiple statutory "non-
stay" provisions. Pp. 2–7.

(b) Bielski's arguments to overcome the *Griggs* principle are unper-
suasive. *First*, the courts of appeals possess robust tools to prevent
unwarranted delay and deter frivolous interlocutory appeals that an
automatic stay might otherwise encourage. *Second*, Congress included
explicit stay requirements in two other statutory provisions for rea-
sons particular to those statutes, not because Congress thought that
an interlocutory appeal did not ordinarily stay district court proceed-
ings. *Third*, the result here does not create a special, arbitration-pre-
ferring procedural rule, but simply subjects arbitrability appeals to the
same stay principles that courts apply in other analogous contexts
where an interlocutory appeal is authorized. *Fourth*, experience shows
that ordinary discretionary stay factors would not adequately protect
parties' rights to an interlocutory appellate determination of arbitra-
bility. In any event, the background *Griggs* rule applies regardless of
how often courts might otherwise grant stays under the ordinary dis-
cretionary stay factors. *Fifth*, while the Court has recognized that
questions of arbitrability are severable from merits questions, the sole
issue here is whether the district court's authority to consider a case is
"involved in the appeal" when an appellate court considers the thresh-
old question of arbitrability, *Griggs*, 459 U. S., at 58. The answer is
yes. Pp. 7–10.

Reversed and remanded.

Cite as:  599 U. S. ____ (2023)      3

Syllabus

KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and ALITO, GORSUCH, and BARRETT, JJ., joined.  JACKSON, J., filed a dissenting opinion, in which SOTOMAYOR and KAGAN, JJ., joined in full, and in which THOMAS, J., joined as to Parts II, III and IV.

NOTICE: This opinion is subject to formal revision before publication in the
United States Reports. Readers are requested to notify the Reporter of
Decisions, Supreme Court of the United States, Washington, D. C. 20543,
pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

No. 22–105

COINBASE, INC., PETITIONER *v.* ABRAHAM BIELSKI

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 23, 2023]

JUSTICE KAVANAUGH delivered the opinion of the Court.

When a federal district court denies a motion to compel arbitration, the losing party has a statutory right to an interlocutory appeal. See 9 U. S. C. §16(a). The sole question here is whether the district court must stay its pre-trial and trial proceedings while the interlocutory appeal is ongoing. The answer is yes: The district court must stay its proceedings.

I

Coinbase operates an online platform on which users can buy and sell cryptocurrencies and government-issued currencies. When creating a Coinbase account, individuals agree to the terms in Coinbase's User Agreement. As relevant here, the User Agreement contains an arbitration provision, which directs that disputes arising under the agreement be resolved through binding arbitration.

This case concerns a putative class action filed against Coinbase in the U. S. District Court for the Northern District of California. Abraham Bielski sued on behalf of Coinbase users who allege that Coinbase failed to replace funds fraudulently taken from the users' accounts.

The District Court denied Coinbase's motion to compel

arbitration.  Coinbase then filed an interlocutory appeal to the U. S. Court of Appeals for the Ninth Circuit under 9 U. S. C. §16(a).[1]  Section 16(a) authorizes an interlocutory appeal from the denial of a motion to compel arbitration.

Coinbase also moved to stay District Court proceedings pending resolution of the arbitrability issue on appeal.  The District Court declined to stay its proceedings.  After receiving Coinbase's motion for a stay, the Ninth Circuit likewise declined to stay the District Court's proceedings.  The Ninth Circuit followed its precedent, under which an appeal from the denial of a motion to compel arbitration does not automatically stay district court proceedings.  See *Britton* v. *Co-op Banking Group*, 916 F. 2d 1405, 1412 (1990).  By contrast, however, most other Courts of Appeals to address the question have held that a district court must stay its proceedings while the interlocutory appeal on the question of arbitrability is ongoing.  *E.g.*, *Bradford-Scott Data Corp.* v. *Physician Computer Network, Inc.*, 128 F. 3d 504, 506 (CA7 1997).

To resolve that disagreement among the Courts of Appeals, we granted certiorari.  598 U. S. ___ (2022).

## II

The Federal Arbitration Act governs arbitration agreements.  In 1988, Congress passed and President Reagan signed an amendment to the Act; the amendment is codified at 9 U. S. C. §16(a).  Under §16(a), when a

---

[1] As relevant, the text of §16(a) provides:

"An appeal may be taken from . . . an order . . .

"(A) refusing a stay of any action under section 3 of this title,

"(B) denying a petition under section 4 of this title to order arbitration to proceed,

"(C) denying an application under section 206 of this title to compel arbitration,

"(D) confirming or denying confirmation of an award or partial award, or

"(E) modifying, correcting, or vacating an award."

Opinion of the Court

district court denies a party's motion to compel arbitration, that party may take an interlocutory appeal. Section 16(a) creates a rare statutory exception to the usual rule that parties may not appeal before final judgment. See *Mohawk Industries, Inc.* v. *Carpenter*, 558 U. S. 100, 108–109 (2009). Notably, Congress provided for immediate interlocutory appeals of orders *denying*—but not of orders *granting*— motions to compel arbitration.

The sole question before this Court is whether a district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing. The answer is yes.

Section 16(a) does not say whether the district court proceedings must be stayed. But Congress enacted §16(a) against a clear background principle prescribed by this Court's precedents: An appeal, including an interlocutory appeal, "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56, 58 (1982). That *Griggs* principle reflects a longstanding tenet of American procedure. See *Hovey* v. *McDonald*, 109 U. S. 150, 157 (1883); see also *Price* v. *Dunn*, 587 U. S. ___, ___ (2019) (THOMAS, J., joined by ALITO and GORSUCH, JJ., concurring in denial of certiorari) (slip op., at 7) (describing *Griggs* principle as "well settled"); *Marrese* v. *American Academy of Orthopaedic Surgeons*, 470 U. S. 373, 379 (1985) ("In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal").

The *Griggs* principle resolves this case. Because the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially "involved in the appeal." 459 U. S., at 58. As Judge Easterbrook cogently explained, when a party appeals the denial of a motion to compel arbitration, whether "the litigation may go forward in the district court

is precisely what the court of appeals must decide." *Bradford-Scott Data Corp.* v. *Physician Computer Network, Inc.*, 128 F. 3d 504, 506 (CA7 1997). Stated otherwise, the question of whether "the case should be litigated in the district court . . . is the mirror image of the question presented on appeal." *Id.*, at 505. Here, as elsewhere, it "makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one." *Apostol* v. *Gallion*, 870 F. 2d 1335, 1338 (CA7 1989). In short, *Griggs* dictates that the district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing.[2]

Most courts of appeals to address the question in the §16(a) context have reached that same conclusion. *E.g.*, *Blinco* v. *Green Tree Servicing, LLC*, 366 F. 3d 1249, 1253 (CA11 2004) ("[I]t makes little sense for the litigation to continue in the district court while the appeal is pending").[3] Leading treatises agree that a district court should stay its proceedings while the interlocutory appeal on arbitrability is ongoing. For example, Moore's treatise states that a "stay in these circumstances" is "the sounder approach" and "is consistent with the general [*Griggs*] principle that a district court should not exercise jurisdiction over those aspects of the case that are involved in the appeal." 19 J. Moore, D.

_____

[2] Coinbase concedes that the district court may still proceed with matters that are not involved in the appeal, such as the awarding of costs and attorney's fees. Brief for Petitioner 21; see also 16A C. Wright, A. Miller, E. Cooper, & C. Struve, Federal Practice and Procedure §3949.1, pp. 68–69 (5th ed. 2019).

[3] See also *Levin* v. *Alms & Assoc., Inc.*, 634 F. 3d 260, 266 (CA4 2011); *Ehleiter* v. *Grapetree Shores, Inc.*, 482 F. 3d 207, 215, n. 6 (CA3 2007); *McCauley* v. *Halliburton Energy Servs., Inc.*, 413 F. 3d 1158, 1162–1163 (CA10 2005); *Bombardier Corp.* v. *National R. Passenger Corporation*, 333 F. 3d 250, 252 (CADC 2003); *Bradford-Scott Data Corp.* v. *Physician Computer Network, Inc.*, 128 F. 3d 504, 505–507 (CA7 1997); but see, *e.g.*, *Weingarten Realty Investors* v. *Miller*, 661 F. 3d 904, 907–910 (CA5 2011).

Opinion of the Court

Coquillette, G. Joseph, G. Vairo, & C. Varner, Moore's Federal Practice §203.12[3][a] (3d ed. 2022). Similarly, the Wright and Miller treatise endorses the automatic stay requirement in arbitration cases. The treatise explains that a "complete stay of district-court proceedings pending appeal from a refusal to order arbitration is desirable" because "[c]ontinued trial-court proceedings pending appeal could lead to an entirely wasted trial if arbitration is ordered on appeal." 15B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §3914.17, p. 7 (2d ed., Supp. 2022). In the Circuits that have considered the issue in the analogous contexts of qualified immunity and double jeopardy, moreover, district courts likewise must automatically stay their proceedings while the interlocutory appeal is ongoing.[4] Similarly, as Bielski acknowledges, courts have held that the *Griggs* principle applies to those aspects of the case involved in a certified interlocutory appeal under 28 U. S. C. §1292(b).[5]

The common practice in §16(a) cases, therefore, is for a district court to stay its proceedings while the interlocutory appeal on arbitrability is ongoing. That common practice reflects common sense. Absent an automatic stay of district court proceedings, Congress's decision in §16(a) to afford a right to an interlocutory appeal would be largely nullified.

_____

[4] *E.g.*, *United States* v. *Montgomery*, 262 F. 3d 233, 239–240 (CA4 2001) (double jeopardy); *United States* v. *LaMere*, 951 F. 2d 1106, 1108 (CA9 1991) (same); *United States* v. *Grabinski*, 674 F. 2d 677, 679 (CA8 1982) (same); *United States* v. *Dunbar*, 611 F. 2d 985, 988–989 (CA5 1980) (en banc) (same); *Chuman* v. *Wright*, 960 F. 2d 104, 105 (CA9 1992) (qualified immunity); *Yates* v. *Cleveland*, 941 F. 2d 444, 448–449 (CA6 1991) (same); *Apostol* v. *Gallion*, 870 F. 2d 1335, 1338 (CA7 1989) (same); *Stewart* v. *Donges*, 915 F. 2d 572, 575–576 (CA10 1990) (both).

[5] See Tr. of Oral Arg. 60–61; see also *Green Leaf Nursery* v. *E. I. DuPont De Nemours and Co.*, 341 F. 3d 1292, 1309 (CA11 2003); *Los Angeles* v. *Santa Monica Baykeeper*, 254 F. 3d 882, 885–886 (CA9 2001); *Dayton Independent School Dist.* v. *U. S. Mineral Prods. Co.*, 906 F. 2d 1059, 1063–1064 (CA5 1990).

Opinion of the Court

If the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost—even if the court of appeals later concluded that the case actually had belonged in arbitration all along. Absent a stay, parties also could be forced to settle to avoid the district court proceedings (including discovery and trial) that they contracted to avoid through arbitration. That potential for coercion is especially pronounced in class actions, where the possibility of colossal liability can lead to what Judge Friendly called "blackmail settlements." H. Friendly, Federal Jurisdiction: A General View 120 (1973).

As Judge Easterbrook stated, continuation of proceedings in the district court "largely defeats the point of the appeal." *Bradford-Scott*, 128 F. 3d, at 505. A right to interlocutory appeal of the arbitrability issue without an automatic stay of the district court proceedings is therefore like a lock without a key, a bat without a ball, a computer without a keyboard—in other words, not especially sensible.

From the Judiciary's institutional perspective, moreover, allowing a case to proceed simultaneously in the district court and the court of appeals creates the possibility that the district court will waste scarce judicial resources—which could be devoted to other pressing criminal or civil matters—on a dispute that will ultimately head to arbitration in any event. That scenario represents the "worst possible outcome" for parties and the courts: litigating a dispute in the district court only for the court of appeals to "reverse and order the dispute arbitrated." *Id.*, at 506. The *Griggs* rule avoids that detrimental result.

Importantly, Congress's longstanding practice both reflects and reinforces the *Griggs* rule. When Congress wants to authorize an interlocutory appeal and to automatically stay the district court proceedings during

that appeal, Congress need not say anything about a stay. At least absent contrary indications, the background *Griggs* principle already requires an automatic stay of district court proceedings that relate to any aspect of the case involved in the appeal. By contrast, when Congress wants to authorize an interlocutory appeal, but *not* to automatically stay district court proceedings pending that appeal, Congress typically says so. Since the creation of the modern courts of appeals system in 1891, Congress has enacted multiple statutory "non-stay" provisions.[6] Indeed, Congress enacted a "non-stay" provision the day before enacting §16(a) in 1988. See 102 Stat. 4120 ("Neither the application for, nor the granting of, an appeal . . . shall stay proceedings in the Court of Veterans Appeals").

In short, the *Griggs* rule requires that a district court stay its proceedings while the interlocutory appeal on the question of arbitrability is ongoing.

### III

To overcome the *Griggs* principle, Bielski advances five main arguments. None is persuasive.

*First*, Bielski contends that an automatic stay would encourage frivolous appeals that would improperly delay district court proceedings. To begin with, Bielski has not established that frivolous appeals frequently occur in the Circuits that have long applied the *Griggs* principle in

---

[6] Act of Apr. 3, 1926, ch. 102, 44 Stat. 233–234; Act of Feb. 28, 1927, ch. 228, *id.*, at 1261; Act of Sept. 2, 1958, Pub. L. 85–919, 72 Stat. 1770; Federal Courts Improvement Act of 1982, §125, 96 Stat. 37, 28 U. S. C. §1292(d)(3); Tax Reform Act of 1986, §1558, 100 Stat. 2757–2758, 26 U. S. C. §7482(a)(2)(A); Veterans' Judicial Review Act, 102 Stat. 4120, as amended, 38 U. S. C. §7292(b)(1); Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 119 Stat. 203, 28 U. S. C. §158(d)(2)(D); Puerto Rico Oversight, Management, and Economic Stability Act, §306, 130 Stat. 582, 48 U. S. C. §2166(e)(6); see also Judiciary Act of 1891, §7, 26 Stat. 828; Act of June 6, 1900, ch. 803, 31 Stat. 660–661; Fed. Rule Civ. Proc. 23(f ).

Opinion of the Court

arbitration cases. Cf. *Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 586 U. S. ___, ___ (2019) (slip op., at 8). Nor does Bielski argue that Coinbase's appeal in this case is frivolous. Importantly, moreover, the courts of appeals possess robust tools to prevent unwarranted delay and deter frivolous interlocutory appeals. For example, a party can ask the court of appeals to summarily affirm, to expedite an interlocutory appeal, or to dismiss the interlocutory appeal as frivolous. In addition, nearly every circuit has developed a process by which a district court itself may certify that an interlocutory appeal is frivolous. Brief for Petitioner 51; see also *Arthur Andersen LLP* v. *Carlisle*, 556 U. S. 624, 629 (2009) ("Appellate courts can streamline the disposition of meritless claims and even authorize the district court's retention of" a case "when an appeal is certified as frivolous"). Finally, a court of appeals may impose sanctions where appropriate; the possibility of sanctions also helps deter frivolous appeals. See Fed. Rule App. Proc. 38; *Arthur Andersen*, 556 U. S., at 629.

*Second*, Bielski contrasts §16(a) with two other statutory provisions that contain an explicit stay requirement—§3 of the Federal Arbitration Act and §1292(d)(4) of Title 28. Bielski suggests that Congress would not have included those explicit stay requirements in §3 and §1292(d)(4) unless Congress thought that an interlocutory appeal did not ordinarily stay district court proceedings. Bielski is wrong.

Section 3 of the Act provides for a stay of court proceedings pending *arbitration*, not pending an appeal. That situation does not fall within the *Griggs* rule. No background principle requires automatic stays of district court proceedings *pending arbitration*. In order to automatically stay court proceedings pending arbitration in those cases, Congress therefore affirmatively codified a stay requirement.

As to §1292(d)(4): When Congress added §1292(d)(4)'s

Opinion of the Court

stay requirement in 1988, the relevant subsection already contained a provision, §1292(d)(3), that expressly made stays of proceedings in certain courts discretionary rather than mandatory. To avoid any misinterpretation of §1292(d)(4) because of that preexisting language in §1292(d)(3), Congress specified the right to an automatic stay pending appeal in §1292(d)(4). That unusual circumstance does not diminish the operation of the *Griggs* rule in the context of arbitrability appeals.

*Third*, Bielski contends that requiring an automatic stay would create a special, arbitration-preferring procedural rule. That is incorrect. In fact, Bielski's proposed approach would *disfavor* arbitration. Applying the *Griggs* rule here simply subjects arbitrability appeals to the same stay principles that courts apply in other analogous contexts where an interlocutory appeal is authorized, including qualified immunity and double jeopardy. Bielski further points to forum selection clauses as an analogy. But unlike §16(a) arbitrability appeals, Congress has not created a right to an interlocutory appeal for cases involving forum selection clauses. So a stay in the forum selection context could be required only in those cases where there is a certified §1292(b) interlocutory appeal of the forum selection issue.

*Fourth*, Bielski suggests that there is no need for an automatic stay because the ordinary discretionary stay factors would adequately protect parties' rights to an interlocutory appellate determination of arbitrability. To begin with, experience shows that Bielski is incorrect. District courts and courts of appeals applying the usual four-factor standard for a discretionary stay often deny stays in §16(a) appeals because courts applying that test often do not consider litigation-related burdens (here, from the continued District Court proceedings) to constitute irreparable harm. See *Nken* v. *Holder*, 556 U. S. 418, 434–435 (2009); *FTC* v. *Standard Oil Co. of Cal.*, 449 U. S. 232,

244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury" (internal quotation marks omitted)); App. to Pet. for Cert. 43a (District Court in *Bielski* stating that "[m]ere litigation expenses do not generally constitute irreparable injury" for purposes of stay pending appeal). In any event, the background *Griggs* rule applies regardless of how often courts might otherwise grant stays under the ordinary discretionary stay factors.

*Fifth*, Bielski relies on this Court's statement that questions of arbitrability are "severable from the merits of the underlying disputes." *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 21 (1983). But the sole issue here is whether the district court's authority to consider a case is "involved in the appeal" when an appellate court considers the threshold question of arbitrability. *Griggs*, 459 U. S., at 58. The answer is yes, and *Moses H. Cone* says nothing to the contrary.

*          *          *

We conclude that, after Coinbase appealed from the denial of its motion to compel arbitration, the District Court was required to stay its proceedings. On remand, we anticipate that the Ninth Circuit here, as we anticipate in §16(a) appeals more generally, will proceed with appropriate expedition when considering Coinbase's interlocutory appeal from the denial of the motion to compel arbitration. We reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.[7]

*It is so ordered.*

---

[7] The Court's judgment today pertains to respondent Abraham Bielski. The writ of certiorari as to respondents David Suski et al. is dismissed as improvidently granted.

JACKSON, J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 22–105

_____

## COINBASE, INC., PETITIONER *v.* ABRAHAM BIELSKI

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 23, 2023]

JUSTICE JACKSON, with whom JUSTICE SOTOMAYOR and
JUSTICE KAGAN join, and with whom JUSTICE THOMAS joins
as to Parts II, III, and IV, dissenting.

When a federal court of appeals conducts interlocutory
review of a trial court order, the rest of the case remains at
the trial court level. Usually, the trial judge then makes a
particularized determination upon request, based on the
facts and circumstances of that case, as to whether the re-
maining part of the case should continue unabated or be
paused (stayed) pending appeal. This discretionary deci-
sionmaking promotes procedural fairness because it allows
for a balancing of all relevant interests. See *Nken* v. *Holder*,
556 U. S. 418, 434 (2009).

Today, the Court departs from this traditional approach.
It holds that, with respect to an interlocutory appeal of a
trial court order denying arbitration, a trial court must al-
ways "stay its pre-trial and trial proceedings while the in-
terlocutory appeal is ongoing." *Ante*, at 1. In other words,
in this context, the Court sees fit to impose a mandatory
general stay of trial court proceedings.

This mandatory-general-stay rule for interlocutory arbi-
trability appeals comes out of nowhere. No statute imposes
it. Nor does any decision of this Court. Yet today's majority
invents a new stay rule perpetually favoring one class of
litigants—defendants seeking arbitration. Those defend-
ants will now receive a stay even when, according to the

JACKSON, J., dissenting

usual equitable analysis, there is no good reason for one. And, in reaching this result, the Court concludes for the first time that an interlocutory appeal about one matter (arbitrability) bars the district court from proceeding on another (the merits). That logic has such significant implications for federal litigation that the majority itself shies away from the Pandora's box it may have opened.

I see no basis here for wresting away the discretion traditionally entrusted to the judge closest to a case. I respectfully dissent.

## I

Congress did not impose the mandatory-general-stay rule that the majority adopts today.

Start with the governing statute. Congress addressed the kind of interlocutory appeals at issue here in 9 U. S. C. §16—the section of the Federal Arbitration Act it enacted to govern "Appeals." 102 Stat. 4671 (amending the Federal Arbitration Act, 9 U. S. C. §1 *et seq.*). Section 16 provides that "[a]n appeal may be taken from" specified orders and decisions, and "an appeal may not be taken from" others. The appeals that §16 authorizes include interlocutory appeals of orders denying requests for arbitration. §§16(a)(1)(A)–(C).

But nowhere did Congress provide that such an interlocutory appeal automatically triggers a general stay of pretrial and trial proceedings. As the majority opinion admits, §16 never even mentions a stay pending appeal. *Ante*, at 3.

Even beyond that, related provisions confirm that Congress imposed no mandatory general stay in §16 appeals. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Nken*, 556 U. S., at 430 (alterations and internal quotation marks omitted). Congress did that here—twice.

JACKSON, J., dissenting

First, Congress expressly mandated a general interlocutory stay in another provision of the same 1988 law that enacted §16. See 102 Stat. 4652, 4670–4671. Like §16, that other provision—codified at 28 U. S. C. §1292(d)(4)—authorizes interlocutory appeals. See §1292(d)(4)(A). But unlike §16, the text of that other provision specifies that, upon an interlocutory appeal, "proceedings shall be . . . stayed until the appeal has been decided." §1292(d)(4)(B). This resembles the rule the majority adopts today for §16 appeals. Yet Congress omitted it from §16, while simultaneously imposing it in §1292(d)(4).

Second, Congress expressly mandated a general interlocutory stay in another provision of the Federal Arbitration Act. Section 3 pertains to a circumstance in which the trial court is "satisfied" that an issue should be referred to arbitration. 9 U. S. C. §3. In such a case, the statute expressly provides that the trial court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had." *Ibid.* (emphasis added). Again, the contrast with §16 is stark. Congress specified a mandatory general stay of trial court proceedings in §3 (when the trial court determines that arbitration is warranted) but not §16(a) (when the court determines that arbitration is unwarranted).

The majority opinion waves away these mandatory-general-stay provisions by jerry-rigging explanations for why Congress mandated those stays expressly without doing so in §16. *Ante*, at 8–9. But the point remains: Congress focused on stays when crafting the 1988 law and the Federal Arbitration Act. And when it intended to mandate interlocutory stays, it said so expressly. Nothing stopped Congress from doing so in §16—yet it chose not to. This underscores that §16 does not mandate a stay.[1]

––––––––––

[1] The majority's explanation for why Congress mandated a stay in 28

4                    COINBASE, INC. *v.* BIELSKI

                      JACKSON, J., dissenting

Given all this, it is no surprise that Congress's enact-
ments barely figure into the majority opinion. The manda-
tory-general-stay rule is so untethered from §16 that the
statutory text has no role in the Court's reasoning.

And when Congress's work finally does take the stage
near the end of the Court's analysis, it plays a minor part.
See *ante*, at 6–7. The Court notes that other statutes ex-
pressly provide that appeals do *not* automatically stay dis-
trict court proceedings. *Ante*, at 7, and n. 6. From this, the
Court tries to draw an across-the-board inference that, un-
less Congress expressly disavows the majority's manda-
tory-general-stay rule, that rule applies.

The Court's inference fails. The statutes that the major-

_____

U. S. C. §1292(d)(4) also makes no sense. According to the majority, Con-
gress usually remains silent when it intends to mandate a stay. *Ante*, at
6–7, 8–9. Congress expressly imposed a mandatory stay in §1292(d)(4),
the majority says, only because a pre-existing provision, §1292(d)(3),
would otherwise have made stays in §1292(d)(4) appeals discretionary.
*Ante*, at 8–9.

But that last point holds no water. Paragraph (3) has no bearing on
paragraph (4), because these two provisions govern different kinds of ap-
peals.

Specifically, paragraph (3) governs certain appeals *by permission*,
while paragraph (4) governs a separate set of appeals *as of right*. Para-
graph (3) addresses events unique to permissive appeals: "Neither the
*application for* nor the *granting of* an appeal" stays trial court proceed-
ings. §1292(d)(3) (emphasis added). Paragraph (3) thus corresponds to
paragraphs (1) and (2), which authorize permissive appeals "if applica-
tion is made" and granted. §§1292(d)(1)–(2). Meanwhile, paragraph (4)
separately authorizes certain as-of-right appeals, §1292(d)(4)(A), and it
imposes mandatory stays in such appeals, §1292(d)(4)(B). In an appeal
as of right under paragraph (4), paragraph (3) never kicks in, because
there is no "application for" or "granting of" an appeal, §1292(d)(3).

Thus, the majority's story—that Congress needed express stay lan-
guage to avoid overlap with paragraph (3)—turns on a red herring.
There is no such overlap. Instead, only the more straightforward expla-
nation remains: Congress imposed a mandatory general stay in
§1292(d)(4)—but not 9 U. S. C. §16—because it intended such a stay un-
der the former but not the latter.

JACKSON, J., dissenting

ity points to have nothing to do with arbitration or §16 (unlike the two provisions discussed above, which were enacted in the same 1988 law as §16 and codified alongside §16 in the Federal Arbitration Act, respectively, *supra*, at 3).

Moreover, and in any event, the majority's cited statutes do not support the majority's mandatory-general-stay rule. The majority invokes statutes that expressly preclude automatic stays of *all* trial court proceedings. But if the majority is correct that Congress intended the opposite when a statute is silent, then stays of *all* trial court proceedings would be required. Yet, the majority's own holding does not go that far. See *ante*, at 4, n. 2. Instead, the majority requires stays for *some* proceedings (those related to the merits) but not others (those related to costs and fees), *ibid.*—a line that appears nowhere in the majority's cited statutes.

At the end of the day, the best the majority can do is point to a smattering of provisions that do *not* contain the rule that the majority adopts. And those provisions do not even relate to §16 or the majority's rule (staying litigation generally but not proceedings on costs and fees). Neither those statutes, nor any other, imposes on arbitrability appeals the stay rule that the Court announces.

## II

Unable to locate its rule in a statute, the majority opinion pivots to "background principle[s]." *Ante*, at 3. But there is no background mandatory-general-stay rule.

To the contrary, the background rule is that courts have case-by-case discretion regarding whether or not to issue a stay. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis* v. *North American Co.*, 299 U. S. 248, 254 (1936). That power is discretionary—it "calls for the exercise of judgment, which must weigh competing interests" in each particular case. *Id.*, at 254–255.

JACKSON, J., dissenting

One key to this discretionary-stay tradition is its "suppleness of adaptation to varying conditions." *Id.*, at 256. A stay "is not a matter of right" and cannot be imposed "reflexively." *Nken*, 556 U. S., at 427 (internal quotation marks omitted).

That has long been the default rule. A court's discretion "to grant a stay pending review" is "firmly imbedded in our judicial system, consonant with the historic procedures of federal appellate courts." *Ibid.* (internal quotation marks omitted). It is "a power as old as the judicial system of the nation." *Ibid.* (internal quotation marks omitted); see 28 U. S. C. §1651(a) (All Writs Act, originally enacted in 1789, 1 Stat. 81–82).

Significantly for present purposes, discretionary stays are the default for interlocutory appeals in particular—and this dates back to the first federal interlocutory-appeal statute in 1891. Judiciary Act of 1891, §7, 26 Stat. 828; see 15A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §3906, p. 346 (3d ed. 2022). There, Congress established that "proceedings . . . in the court below *shall not be stayed unless otherwise ordered* by that court during the pendency of such appeal." §7, 26 Stat. 828 (emphasis added).

That statute cemented a background discretionary-stay rule that governed even where Congress was silent—as this Court has repeatedly recognized. Shortly after the 1891 Act, a case arose under conditions in which the Act was silent about whether a stay should issue. *In re Haberman Mfg. Co.*, 147 U. S. 525, 530 (1893) (finding "no express provision" on point). This Court applied the background rule: "[T]he Circuit Court had a discretion to grant or refuse" a stay. *Ibid.* Another case of statutory silence arose a few years later. *In re McKenzie*, 180 U. S. 536, 550–551 (1901). Again, this Court reiterated federal courts' "inherent power . . . to stay or supersede proceedings on appeal" from an interlocutory order. *Id.*, at 551. As this Court summarized in

JACKSON, J., dissenting

yet another case, the rule is that the trial court has "authority" during an interlocutory appeal "to take further proceedings in the cause, unless in its discretion it orders them to be stayed, pending the appeal." *Smith* v. *Vulcan Iron Works*, 165 U. S. 518, 525 (1897). That authority is "recognized" by the 1891 Act but existed already as a traditional matter, "often exercised by other courts of chancery." *Ibid.*

*This* was the background against which Congress enacted §16. And—importantly—courts understood stays as discretionary with respect to interlocutory appeals concerning arbitrability. Before Congress enacted §16, parties brought interlocutory arbitrability appeals under other sources of appellate jurisdiction, and courts treated stays as discretionary, not mandatory.[2] Yet, according to the majority, Congress sought to displace that common understanding when it enacted §16—without saying anything at all about stays pending appeal.

Even setting all that aside, the majority opinion's reliance on a "background" rule, *ante*, at 3, still fails. The majority has not shown that its *own* rule (the mandatory-general-stay rule) existed as a background matter when Congress enacted §16 in 1988. Indeed, the majority opinion does not identify *a single case* in which this Court imposed a mandatory general stay of pre-trial and trial proceedings pending an interlocutory appeal. Not in an arbitration case. Not in an analogous case about the proper adjudicatory forum for a dispute. Not in any interlocutory appeal at all.

——————

[2] See, *e.g.*, *Pearce* v. *E. F. Hutton Group, Inc.*, 828 F. 2d 826, 829 (CADC 1987); *Maxum Foundations, Inc.* v. *Salus Corp.*, 779 F. 2d 974, 977 (CA4 1985); *Matterhorn, Inc.* v. *NCR Corp.*, 727 F. 2d 629, 630 (CA7 1984); *Lummus Co.* v. *Commonwealth Oil Refining Co.*, 273 F. 2d 613, 613–614 (CA1 1959) (*per curiam*); *Bernhardt* v. *Polygraphic Co. of Am.*, 235 F. 2d 209, 211 (CA2 1956) (*per curiam*).

JACKSON, J., dissenting

### III

Because neither the statute nor any background law states that an interlocutory appeal over arbitrability triggers a mandatory general stay of trial court proceedings, the majority opinion resorts to spinning such a rule from a single sentence in *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56 (1982) (*per curiam*). But *Griggs* expresses a far narrower principle, and is thus insufficient to support the majority's mandatory-general-stay rule.

*Griggs* stands for a modest proposition: Two courts should avoid exercising control over the same order or judgment simultaneously. The problem *Griggs* identifies is the "danger a district court and a court of appeals would be simultaneously analyzing the same judgment." *Id.*, at 59. The cure *Griggs* prescribes is that "[t]he filing of a notice of appeal . . . divests the district court of its control over those aspects of the case involved in the appeal." *Id.*, at 58.

And the reason is simple. Two courts simultaneously analyzing the same judgment could step on each other's toes. It would interfere with the appellate court's review of an order if the district court modified that order mid-appeal. Instead, an order should be reviewed by one court at a time.

This notion of "one order, one reviewing court" is all that was at issue in *Griggs*. *Griggs* concerned a party that tried to appeal a judgment while the District Court was still considering whether to alter that same judgment. *Id.*, at 56. The Court held that the appeal needed to wait until after the District Court's work on that judgment was done. *Id.*, at 60–61. This result, which followed from the Federal Rules of Appellate Procedure, was necessary to "avoi[d]" the situation "in which district courts and courts of appeals would both have had the power to *modify the same judgment*." *Id.*, at 60 (emphasis added).

Properly understood and applied here, *Griggs* divests the district court of control over only a narrow slice of the case. The interlocutory appeal addresses an order declining to

JACKSON, J., dissenting

compel arbitration. *Griggs* merely prevents the district court from modifying that order—*i.e.*, *Griggs* prevents the district judge from revisiting whether to compel arbitration while the appeal is pending. *Griggs* does not stop the district court from proceeding on matters other than arbitrability.

The majority opinion, however, transmogrifies *Griggs* into a sweeping stay of "pre-trial and trial proceedings" on not just arbitrability, but also the merits. *Ante*, at 1. According to the majority, if the question on appeal is "whether the litigation may go forward in the district court," then the district court loses control over "*the entire case.*" *Ante*, at 3–4 (emphasis added; internal quotation marks omitted).

That rule far surpasses the statement in *Griggs*—the sole statement on which the majority relies—that a district court loses "control over those aspects of the case involved in the appeal." 459 U. S., at 58; *ante*, at 3. Only the arbitrability order is on appeal, not the merits. And those matters are distinct. As this Court recognized (before Congress enacted §16), "arbitrability" is "easily severable from the merits of the underlying disputes." *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 21 (1983).

The majority cannot justify why it treats these "easily severable" matters as intertwined in an arbitrability appeal. "[T]he question on appeal," as the majority opinion correctly identifies, is "whether the case belongs in arbitration." *Ante*, at 3. But the questions remaining before the district court are different: whether the claims have merit, whether the parties are entitled to the discovery they seek, and so on. Proceedings on those questions would not interfere with the appellate court's review of the arbitrability order. Those proceedings, in other words, do not implicate the *Griggs* principle, which addresses the "danger a district

court and a court of appeals would be simultaneously analyzing the same judgment." 459 U. S., at 59.

The Court today expands *Griggs* beyond what the Congress that enacted §16 could have foreseen, let alone silently incorporated. Indeed, the majority can identify no other time this Court wielded *Griggs* to mandate a stay of all merits proceedings just because a distinct procedural question was on appeal.

In fact, the majority's supercharged version of *Griggs* contradicts its own account of Congress's intent. Consider the statutes that the majority points to as models of how Congress would reject a mandatory-general-stay rule. *Ante*, at 6–7, and n. 6; see *supra*, at 4–5. Under those statutes, the majority says, Congress intends that an interlocutory appeal does "*not* . . . automatically stay district court proceedings." *Ante*, at 7. Yet, the majority also seemingly accepts that under those statutes, "the *Griggs* principle applies." *Ante*, at 5. And per "the *Griggs* principle" as the majority sees it, in some cases an interlocutory appeal *does* automatically stay district court proceedings. *Ante*, at 3–4. So a mandatory general stay is thus both prohibited (by the statutory text) and required (by the majority's view of *Griggs*).[3] As this contradiction underscores, the majority's holding is untethered from any statute and any existing conception of

———————
[3] This contradiction arises, for example, under 28 U. S. C. §1292(b), one of the statutes that the majority cites as prohibiting mandatory general stays. See *ante*, at 7, n. 6 (citing Act of Sept. 2, 1958, Pub. L. 85–919, 72 Stat. 1770 (codified at §1292(b))). Section 1292(b) authorizes permissive interlocutory appeals from a wide range of orders involving "controlling question[s] of law"—including rulings on arbitrability. Arbitrability appeals under §1292(b) were commonplace when Congress enacted 9 U. S. C. §16 in 1988. See, *e.g.*, *Danford* v. *Schwabacher*, 488 F. 2d 454, 457 (CA9 1973) ("Since 1958 interlocutory arbitration orders have been reviewable in accordance with the procedures prescribed by 28 U. S. C. §1292(b)"). And in a §1292(b) arbitrability appeal, the majority's reading of §1292(b) would prohibit a mandatory general stay, while the majority's view of *Griggs* would require one.

JACKSON, J., dissenting

*Griggs.*

## IV

To justify its new mandatory-general-stay rule, the majority ultimately rests on its assessment of what is "sensible." *Ante*, at 5–6. But even the majority's policy concerns do not support its rule.

The dispute here turns on a subset of cases—those in which a stay is not warranted under the usual discretionary standard. See *Nken*, 556 U. S., at 434. All agree that an interlocutory appeal should trigger a stay if that standard is met. But the majority goes further and requires a stay in *all* cases. Indeed, the majority mandates a stay even if none of the traditional stay prerequisites are present: likelihood of success on the merits, irreparable harm, favorable balance of equities, and alignment with the public interest. See *ibid.*

The majority offers no good reason for that result. The majority says that an automatic stay protects the party seeking arbitration and conserves resources in case the dispute "ultimately head[s] to arbitration" after appeal. *Ante*, at 6. But the concern fades if that scenario is unrealistic—*i.e.*, if the party seeking arbitration is unlikely to succeed on appeal.

The majority's concern is even weaker when a stay would harm the opposing party and the public interest much more than it would protect the party seeking arbitration. Take, for example, a case in which crucial evidence would be lost if discovery is delayed. Say a witness is on her deathbed. Under the majority's rule, if an interlocutory arbitrability appeal under §16(a) is pending, discovery must be stayed and the evidence must be lost. That is apparently so even if the parties *agree* they wish to proceed with discovery.

The majority's rule also prevents courts from crafting case-specific solutions to balance all the interests at stake. Under the traditional discretionary-stay rule, for instance,

JACKSON, J., dissenting

a judge could allow the parties to conduct only the forms of discovery that would also be permitted in arbitration. That would save time and leave nobody worse off even if, as the majority fears, the dispute ultimately heads to arbitration. But this kind of equitable resolution, which the court and the parties might consider "sensible," *ante*, at 6, is forbidden under the majority's mandatory-general-stay rule.

In addition, for each of the majority's concerns favoring a mandatory stay, there are countervailing considerations. The majority professes interest in "efficiency." *Ibid.* But forcing district court proceedings to a halt—for months or years while the appeal runs its course—is itself inefficient. The majority also fears losing other "asserted benefits of arbitration" without a stay. *Ibid.* But *with* a stay, the party opposing arbitration loses the benefits of immediate litigation. A plaintiff's request for injunctive protection against imminent harm, for example, goes unanswered under the majority's rule. Similarly, while the majority laments settlement pressure on parties seeking arbitration, *ibid.*, the rule it announces imposes settlement pressure in the opposite direction. With justice delayed while the case is on hold, parties "could be forced to settle," *ibid.*, because they do not wish—or cannot afford—to leave their claims in limbo. Incongruously, the majority inflicts these burdens on the party that *won* the arbitrability issue before the district court (the party opposing arbitration).

In categorically resolving these conflicts in favor of the pro-arbitration party, the majority's analysis comes down to this: Because the pro-arbitration party gets an interlocutory appeal, it should also get an automatic stay. *Ibid.*; see L. Numeroff, If You Give a Mouse a Cookie (1985). But Congress was entitled to give one without the other. And the right to interlocutory appeal is valuable on its own. It is, as the majority explains, "a rare statutory exception to the usual rule that parties may not appeal before final judgment." *Ante*, at 3. Even without a stay, if the interlocutory

appeal succeeds, the pro-arbitration party gets its wish and the dispute goes to arbitration.

Perhaps for those reasons, real-life parties do not agree with the majority that an interlocutory arbitrability appeal is pointless without an automatic stay. No stay was issued in this case, for example, yet Coinbase still pursued its interlocutory appeal. Nor did other parties stop bringing interlocutory arbitrability appeals in the Circuits that had interpreted §16 to impose no automatic stay.[4]

Yet this Court steps in to give the pro-arbitration party the additional right to an automatic stay that Congress withheld. Now, any defendant that devises a non-frivolous argument for arbitration can not only appeal, but also press pause on the case—leaving plaintiffs to suffer harm, lose evidence, and bleed dry their patience and funding in the meantime. To confer that power on a class of litigants, based on blanket judgments resolving competing policy concerns, is Congress's domain, not ours. And where Congress is silent, the job of managing particular litigation, in light of the concrete circumstances presented, belongs to the judge closest to a case.

---

[4] For over a decade, the Second, Fifth, and Ninth Circuits have all held that a §16(a) appeal triggers no mandatory general stay. *Motorola Credit Corp.* v. *Uzan*, 388 F. 3d 39, 53–54 (CA2 2004); *Britton* v. *Co-op Banking Group*, 916 F. 2d 1405, 1412 (CA9 1990); *Weingarten Realty Investors* v. *Miller*, 661 F. 3d 904, 907–910 (CA5 2011). And those Circuits face no shortage of interlocutory §16(a) appeals. See, *e.g.*, *Palacios* v. *Alifine Dining, Inc.*, 2023 WL 2469765 (CA2, Mar. 13, 2023); *Laurel* v. *Cintas Corp.*, 2023 WL 2363686 (CA9, Mar. 6, 2023); *NATS, Inc.* v. *Radiation Shield Technologies, Inc.*, 2023 WL 2416160 (CA2, Mar. 9, 2023); *Hill* v. *Xerox Bus. Servs., LLC*, 59 F. 4th 457 (CA9 2023); *Johnson* v. *Walmart Inc.*, 57 F. 4th 677 (CA9 2023); *Noble Capital Fund Mgmt., LLC* v. *US Capital Global Inv. Mgmt., LLC*, 31 F. 4th 333 (CA5 2022); *Forby* v. *One Technologies, LP*, 13 F. 4th 460 (CA5 2021); *Soliman* v. *Subway Franchisee Adv. Fund Trust, Ltd.*, 999 F. 3d 828 (CA2 2021); *Polyflow, LLC* v. *Specialty RTP, LLC*, 993 F. 3d 295 (CA5 2021).

## V

The Court today ventures down an uncharted path—and that way lies madness.  Never before had this Court mandated a general stay simply because an interlocutory appeal poses the question "whether the litigation may go forward in the district court."  *Ante*, at 3 (internal quotation marks omitted).  And a wide array of appeals seemingly fits that bill.

Indeed, any appeal over the proper forum for a dispute would arguably raise the same question.  After all, "an arbitration agreement is 'a specialized kind of forum-selection clause.'"  *Viking River Cruises, Inc.* v. *Moriana*, 596 U. S. ___, ___ (2022) (slip op., at 11) (quoting *Scherk* v. *Alberto-Culver Co.*, 417 U. S. 506, 519 (1974)).  If arbitration appeals require stays of all pre-trial and trial proceedings, why not all appeals about forum-selection agreements?  And why not appeals over non-contractual disputes over the proper adjudicator, like venue, personal jurisdiction, *forum non conveniens*, federal-court jurisdiction, and abstention?

For that matter, "virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'"  *Digital Equipment Corp.* v. *Desktop Direct, Inc.*, 511 U. S. 863, 873 (1994).  "Such motions can be made in virtually every case."  *Ibid.*  Does *every* interlocutory appeal concerning a case-dispositive issue now trigger a mandatory general stay of trial court proceedings?

Taken that broadly, the mandatory-general-stay rule the Court adopts today would upend federal litigation as we know it.  Aware that any interlocutory appeal on a dispositive issue grinds the plaintiff's case to a halt, defendants would presumably pursue that tactic at every opportunity.  This would occur, for example, in interlocutory appeals available as of right under 28 U. S. C. §1292(a)(1) from orders granting preliminary injunctions.  Any defense lawyer worth her salt would invoke the right to take that appeal

JACKSON, J., dissenting

and throw up some objection—to venue, jurisdiction, or a dispositive element of the merits—to trigger a mandatory stay. For plaintiffs, then, every preliminary-injunction motion becomes a trap: Even if the motion is granted, the defendant can take that opportunity to stop the trial court proceedings in their tracks.

Facing these destabilizing consequences, the majority stops short of following its own reasoning to that ominous conclusion. Today's holding reaches only arbitration appeals under §16(a). *Ante*, at 1, 7. And it might well be that the concerns motivating today's mandatory-general-stay rule do not extend beyond arbitration. So the majority will not commit, for example, to concluding that appeals over non-arbitration forum-selection clauses warrant the same mandatory stay. *Ante*, at 9.

I agree with that hesitation—even one step further down this path is much too far. The mandatory-general-stay rule that the Court manufactures is unmoored from Congress's commands and this Court's precedent. And the windfall that the Court gives to defendants seeking arbitration, preferencing their interests over all others, is entirely unwarranted. The Court now mandates that result no matter how unjust that outcome is, according to traditional equitable standards, in a given case. This endeavor is unfounded, unwise, and—most fundamentally—not our role.